## No. 14,344.

HUMMEL *v.* BOARD OF CHIROPRACTIC EXAMINERS ET AL.
(87 P. [2d] 248)

Decided February 6, 1939.

Mr. James T. Burke, Mr. Truman A. Stockton, Jr., for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Reid Williams, Assistant, for defendants in error.

*En Banc.*

Mr. Justice Francis E. Bouck delivered the opinion of the court.

A writ of certiorari was issued by the district court of Denver at the instance of the plaintiff in error, Dr. Nellie C. Hummel, against the State Board of Chiropractic Examiners of Colorado, who revoked the license given to her in 1922 to practice chiropractic. The district court dismissed the writ, thus leaving the revocation in full force and effect. It is this judgment of dismissal which is before us for review.

The board itself was divided, three members voting for revocation and two voting against it.

The questions here presented are, first, whether the board had jurisdiction of the subject matter; if so, second, whether the board regularly pursued its authority; if so, third, whether the board used a sound discretion. A negative answer to any of these three questions will require a reversal. As to the first issue, this depends upon whether the board acquired jurisdiction by

the particular complaint filed against Dr. Hummel. As to all three issues, the case must of course be judged solely by the record before us, which contains everything that came before the board.

Originally the practice of chiropractic was regulated by the State Board of Medical Examiners. However, chapter 34 of '35 C. S. A. was enacted in 1933 to transfer the regulation of chiropractors to a State Board of Chiropractic Examiners, created for the purpose. Section 11 thereof, so far as applicable, reads as follows: ''The board * * * may suspend or revoke a license to practice chiropractic in this state * * * upon any of the following grounds, to-wit: the employment of fraud or deception in applying for license or in passing an examination provided for in this chapter; the practice of chiropractic under a false or assumed name; the conviction of a crime involving moral turpitude; mal-practice; unprofessional, dishonorable or immoral conduct; the prescribing, compounding or administering of drugs; the administering of anaesthetics; the practice of obstetrics; the practice of electro-therapy without a certificate therefor; the practice of surgery; habitual intemperance in the use of alcoholic or ardent spirits, narcotics or stimulants. Charges against any licensee * * * to practice chiropractic may be presented under oath to the board by any person claiming to have knowledge of the matter stated in such charge. Any person who is a licensee * * * to practice chiropractic, against whom charges for suspending or revoking * * * a license is presented to said board with a view of having the board suspend or revoke * * * a license, shall be furnished with a copy of such charges at least thirty (30) days before such charges are set for hearing and shall have a hearing before the board in person, and at such hearing may be represented by an attorney, and witnesses may be examined by the board respecting the guilt or innocence of said accused * * *. The action upon such hearings by the board may be reviewed by the district court of the state of Colorado, in

the proper district by writ of certiorari under the code of civil procedure."

Under the foregoing section, proof of the final and conclusive conviction of a crime of the class mentioned by the statute would, of course, be sufficient ground for suspension or revocation of a license. But such a conviction is not shown, since a mass conviction in the county court of Montrose county of six unrelated petit larcenies charged against Dr. Hummel in one information was nullified by this court's reversal in *Hummel v. People,* 98 Colo. 98, 52 P. (2d) 669, and no other conviction is shown.

Ostensibly under the above quoted section, a complaint was filed, sworn to by the complainant as the statute required, on which the board purported to act, alleging that Dr. Hummel had committed two of the same six petit larcenies the conviction of which had theretofore been set aside by this court, as stated. Such a charge obviously does not fall within the scope of grounds set forth in the aforesaid section 11. It is the conviction, not the commission, of certain offenses that is ground for discipline. No statutory ground was embraced within the complaint, which alone was mentioned in the thirty days' notice to Dr. Hummel as the ground for prospective discipline at the impending hearing. The notice was clearly insufficient to present any other ground.

After the hearing had begun, and when the complaint was assailed as insufficient, the board, over the objection of counsel for Dr. Hummel, granted an Assistant Attorney General (not the one now appearing in this court) leave to amend the complaint then and there by adding the allegation that in the commission of said acts Dr. Hummel was guilty of unprofessional, dishonorable and immoral conduct. This was manifestly an attempt to validate a defective complaint by using language that would present another ground not theretofore mentioned. The only duty of the attorney general under the 1933 Act is (section 17) "to advise the board upon all legal matters and to represent the board in all actions brought by or

against it.'' He is not in any sense the complainant or prosecutor and does not ex officio supplant the one who files charges under section 11. The amendment made was not supported by the required oath either of the original complainant or anybody else, and the board therefore had no right to consider it in the hearing, since the oath required by the statute is plainly jurisdictional. Because of this error, the first of the three questions above mentioned is answered in the negative, and the judgment must accordingly be reversed for lack of jurisdiction.

██ ██ But even if the board had acquired jurisdiction, the judgment of the district court and the decision of the board could not be sustained. It is not charged, and in view of the express wording of the particular amendment it could not be contended, that there was any unprofessional, dishonorable or immoral conduct other than the alleged commission of the misdemeanors asserted, which had no connection with the practice of chiropractic and of which misdemeanors Dr. Hummel was not judicially convicted.

The ''unprofessional, dishonorable or immoral conduct'' referred to in the statute would naturally and admittedly include certain things such as malpractice (from the standpoint of chiropractic), or false representation by public advertisement or otherwise of inevitable cure by chiropractic, or gross personal immorality clearly objectionable in common social or professional intercourse, or misrepresentations or misdeeds directly connected with the professional practice of a chiropractor. ''Unprofessional'' has of course a definite meaning tying ''unprofessional conduct'' to such practice by the very use of the term. According to ordinary interpretation, the adjectives in the expression ''unprofessional, dishonorable or immoral conduct'' would be understood as covering situations of the same general class. Indeed, ''immoral'' has been declared to be synonymous with ''unprofessional,'' and so has ''dishonorable.'' Compare: *Chenoweth v. State Board,* 57 Colo. 74, 141 Pac. 132;

*State v. State Board,* 32 Minn. 324, 20 N. W. 238. These situations naturally suggest a direct connection with the practice of the profession. This connection is wholly lacking here.

We are impelled to consider the matter further in order to emphasize the danger involved in proceeding as the board did in the present instance.

The original criminal prosecution, in which it was improperly attempted to join six alleged offenses entirely independent of each other, failed, as above shown. Since the jurisdiction over criminal cases is primarily vested in the courts, it would have been better and fairer, after our decision in the Hummel case, supra, to have further prosecuted Dr. Hummel—if at all—in the criminal courts and according to the principles we there laid down. For reasons satisfactory to the prosecuting officers the further criminal prosecution might, of course, be abandoned. Such prosecution, it is clear, was actually abandoned, and we must assume the abandonment to have been for valid reasons.

Instead of leaving the matter of conviction or acquittal to the criminal court, however, the board undertook to function as a substitute tribunal. The first thing it did was to entertain a complaint that had the same weakness as the criminal information condemned in the Hummel case, namely, that of alleging at the same time the commission of more than one criminal offense. It tried the case accordingly. This procedure, if approved, would vest in an administrative body of laymen vastly more power of condemnation than in the duly organized judicial tribunals.

In the Hummel case, supra (at page 100), we approved of the quotation made in *Trask v. People,* 35 Colo. 83, 88, 83 Pac. 1010, 1012, from *White v. People,* 8 Colo. App. 289, 294, 45 Pac. 539, 540, as follows:

"Now, the very fact of the prosecution of a prisoner at one time for several different crimes must have a tendency to prejudice the jury against him. He is presented

to them, not as charged with the commission of one offense, but as a habitual criminal, and so an impression may be produced upon them unfavorable to him difficult to remove, and which has a tendency to make his conviction easy.''

If such an omnibus proceeding is an unwholesome deviation from recognized procedure in the regular courts of criminal jurisdiction, then all the more is it to be avoided when the hearing is before a lay tribunal like the defendant in error board.

 The board undertook to try Dr. Hummel on two of the original six charges of petit larceny as aforesaid, yet it admitted evidence not only of these two charges, but of the omitted four charges as well. This was clearly improper and erroneous, going beyond the scope of the complaint.

In view of the reversal necessitated on the grounds above set forth, it is not necessary to consider the specific evidence admitted by the board, which was palpably insufficient.

 It is noteworthy that, purporting to act under the statutory power granted the Board of Chiropractic Examiners to revoke or suspend a chiropractor's license, the board has imposed upon Dr. Hummel the extreme penalty, namely, the revocation of her license, thus depriving her of her profession and her means of livelihood. The board has done so after this court, by nullifying the criminal convictions in the county court, had restored to her the constitutional right to a presumption of innocence. Had she been lawfully convicted in criminal cases of these misdemeanors she could not have been sentenced, on the two charges herein surviving, to more than twice the maximum penalty provided for petit larcenies, which is imprisonment in the county jail for not more than 60 days and fine of not more than $100, either of which, or both, could be imposed in a particular case (the entire penalties actually imposed for the six alleged larcenies, as recited in *Hummel v. People, supra,* con-

484

sisting of a total of $45 in fines). In lieu of the penalties which a court of record could or would have imposed in case of lawful conviction, the board undertook to deprive her of her life profession. Such severity may well be deemed in and of itself an abuse of discretion.

It may be incidentally mentioned that Dr. Hummel, if deprived of her license, would perhaps be unable to apply successfully for reinstatement, in view of the requirements now contained in the ''Basic Science Act, 1937'' (S. L. '37, page 383, chapter 106), adopted by the General Assembly during the pendency of the case before the board and in the courts.

The extreme penalty, as already stated, was declared by only three of the five members of the board.

Primarily because the board took jurisdiction on a palpably defective complaint, but also for the additional reasons stated, we are constrained to reverse the district court judgment which sustained the action of the board. The case will be remanded to the district court, and that court will issue its writ of certiorari commanding the Board of Chiropractic Examiners to vacate the order by which it revoked Dr. Hummel's license and, further, to restore her to the roll of licensed chiropractors.

Judgment reversed with directions.

MR. JUSTICE YOUNG concurs in the conclusion.

MR. JUSTICE BAKKE and MR. JUSTICE BURKE dissent.

MR. JUSTICE KNOUS and MR. JUSTICE BOCK not participating.