**HUMBOLDT OIL CO., INC., and J. R. Mastelotto, Plaintiffs,**

v.

**EXXON COMPANY, U.S.A., Defendant.**

**Civ. No. R–82–29 BRT.**

United States District Court,
D. Nevada.

Feb. 24, 1982.

Bell, Rosenberg, Spinetta & Randick by Peter L. Spinetta, Oakland, Cal., and Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane by Julien G. Sourwine, Reno, Nev., for plaintiffs.

McCutchen, Doyle, Brown & Enersen by David M. Heilbron, San Francisco, Cal., John C. Renshaw, Vargas & Bartlett, Reno, Nev., for defendant.

## MEMORANDUM OPINION AND ORDER

BRUCE R. THOMPSON, District Judge.

This is an action brought by Humboldt Oil Co., Inc. (Humboldt) and J.R. Mastelotto (Mastelotto), plaintiffs, for injunctive relief pursuant to 15 U.S.C. § 2805 to restrain defendant Exxon Company, U.S.A. (Exxon) from terminating distributorship contracts relating to Exxon products.

Mastelotto had two distributorships with Exxon. One was in his own name; the other was in the name of Humboldt. Humboldt is a wholly owned subsidiary of Bonus International Corporation (Bonus). At all pertinent times, Mastelotto owned all the capital stock of Bonus and served as president of Humboldt until December 1981. Mastelotto was also the owner of the J.R. Mastelotto distributorship. The distributorship contracts with Exxon, with respect to their termination, substantially track the provisions of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.* In the instant case, Exxon's actions to terminate the distributorships were allegedly supported both by the terms of the PMPA and the distributorship agreements.

On July 28, 1981, a federal jury, sitting in the Northern District of California, found Mastelotto guilty of ten counts of mail fraud and fraud by wire. The essence of the crimes charged in the indictment was that Mastelotto sold fraudulently labeled and branded used motor oil to the public as major brand "virgin" motor oil. On October 15, 1981, the judgment of conviction and sentence were entered against Mastelotto. This conviction is on appeal to the U.S. Court of Appeals for the Ninth Circuit. On November 19, 1981, within 120 days of Exxon's acquisition of knowledge of the conviction (15 U.S.C. § 2802(b)(2)(C)(i)), Exxon delivered notices to J.R. Mastelotto and to Humboldt that the respective distributorship agreements were terminated. The sole reason given by Exxon for termi-nation was "the conviction of J.R. Mastelotto of a felony involving moral turpitude."

The PMPA contains specific provisions relating to the granting of equitable relief:

(2) Except as provided in paragraph (3), in any action under subsection (a) of this section, the court shall grant a preliminary injunction if—

(A) the franchisee shows—

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

(3) Nothing in this subsection prevents any court from requiring the franchisee in any action under subsection (a) of this section to post a bond, in an amount established by the court, prior to the issuance or continuation of any equitable relief.

15 U.S.C. § 2805(b)(2), (3).

The foregoing statutory standards make it clear that the traditional requirements for preliminary injunctive relief (1) that the plaintiff demonstrate likeliness of success on the merits, and (2) that he will suffer irreparable harm in the absence of relief, standards which have also been eroded by recent decisions of the Court of Appeals of the Ninth Circuit, do not obtain with respect to actions brought under the PMPA. The plaintiff to prevail need only show that there is a question which is "fair ground for litigation" and that the balance of hardship favors the franchisee.

Plaintiffs contend that Humboldt is the only franchisee, that Humboldt has not been convicted of anything, and that there is therefore no basis for termination. The

facts and the statutory language belie this contention. While it may well be that the service stations receiving products under the distributorship franchises are doing business with Humboldt, it is nevertheless clear that the distributorship agreement for more than three-fourths of the service stations in question was entered into with Mastelotto as an individual. It is also clear that under 15 U.S.C. § 2801, Mastelotto is a franchisee even with respect to the agreement executed with Humboldt, a corporation. With reference to section 2801, subsection (4) defines "franchisee" as meaning "a retailer or distributor"; subsection (6) defines "distributor" as meaning "any person, including any affiliate of such person, who purchases motor fuel, etc."; subsection 15 defines "affiliate" as meaning "any person who controls, is controlled by, or is under common control with, any other person."

 It is provided in 15 U.S.C. § 2802(c)(12) that termination of a franchise is reasonable upon "conviction of the franchisee of any felony involving moral turpitude." Under the foregoing definitions, and the admitted facts, it is obvious that Mastelotto controls Humboldt which is an affiliate and therefore a franchisee within the meaning of the statute. The conviction of Mastelotto was the conviction of a franchisee.

 Plaintiffs next contend that the offenses of which Mastelotto was convicted were not offenses involving moral turpitude. This contention also is specious. *Twentieth Century-Fox Film Corp. v. Lardner*, 216 F.2d 844 (9th Cir. 1954); Black's Law Dictionary 1359–60 (5th ed. 1979).

Plaintiffs also argue that Mastelotto's conviction is totally irrelevant to the franchise relationship and accordingly does not provide a reasonable basis for its termination. There are no foundations in the statute or the franchise agreements for this contention. Title 15 U.S.C. § 2802(c) expressly states: "As used in subsection (b)(2)(C) of this section, the term 'an event which is relevant to the franchise relationship and as a result of which termination of

the franchise or nonrenewal of the franchise relationship is reasonable' includes events such as ... (12) conviction of the franchisee of any felony involving moral turpitude." Nothing could be more explicit.

 The only argument made by plaintiffs which has given us any concern as presenting an issue involving a fair ground for litigation is the contention that Mastelotto's conviction, which is presently pending on appeal before the U.S. Court of Appeals for the Ninth Circuit, does not constitute a conviction within the meaning of 15 U.S.C. § 2802(c)(12). This contention involves a matter of statutory interpretation with respect to whether the word "conviction" should be held to mean final conviction, or whether conviction in the trial court is alone sufficient. On this issue, plaintiffs rely primarily on state cases, such as, *In re Riccardi*, 182 Cal. 675, 189 P. 694 (1920). Defendant cites an unreported decision, *Fayad v. Mobil Oil Corp.*, from the District of Massachusetts, where the conviction was based on a plea of guilty, which was subsequently followed by a motion to withdraw the plea and vacate the conviction. This case is not apposite inasmuch as the motion was a collateral attack rather than a direct attack on the conviction. The other precedents relied upon by defendant correctly state the general rule that a conviction should be considered final even though an appeal is pending. Our research does not, however, support this as fully applicable law in the instant situation. We think the discussion by the court in *United States v. Samson*, 533 F.2d 721 (1st Cir. 1976), is pertinent:

Defendant's present appeal raises several matters. His first contention is that the statute requires a final conviction. Concededly, this is solely a question of construction; lawfully a classification may be based upon a mere indictment. *United States v. Craven*, 6 Cir., 1973, 478 F.2d 1329, *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85; *United States v. Thoresen*, 9 Cir., 1970, 428 F.2d 654, 661–62. Defendant argues that where Congress did not include indictments, it must

900

have intended the other extreme. This does not follow. By its normal meaning a defendant has been 'convicted by a court' even though the conviction may sometime be reversed. Whether only a final conviction is meant in the particular instance is a matter of overall intent. If the disability imposed by the statute is sufficiently serious to the defendant, it might be appropriate to take the more restricted meaning. *E.g., Donnell v. Board of Registration*, 1930, 128 Me. 523, 149 A. 153 (cancellation of physician's registration); *State v. DeBery*, 1954, 150 Me. 28, 103 A.2d 523 (revocation of driver's license without notice of hearing); *cf. State v. Mottram*, 1962, 158 Me. 325, 184 A.2d 225 (enhanced sentence for 'habitual offender'). But where the consequences of the deprivation are relatively slight compared with the gravity of the public interest sought to be protected, we would give 'convicted by a court' its normal meaning. *United States v. Wooten*, 4 Cir., 1974, 503 F.2d 65 (per curiam); *United States v. Liles*, 9 Cir., 1970, 432 F.2d 18; *cf. United States v. Williams*, 8 Cir., 1973, 484 F.2d 428, 430; *Cassity v. United States*, 6 Cir., 1975, 521 F.2d 1320. Nor are we persuaded by defendant's claim that since what is regarded as a felony may be measured by state law, *see* 18 U.S.C.App. § 1202(c)(2) Congress intended the meaning of convicted to depend upon the local law's singularities, if any. Pp. 722–23. The *Samson* case held that for the purposes of the Federal Firearms Act the conviction was final even though it was pending on appeal. This same result was reached by the Ninth Circuit in *United States v. Liles*, 432 F.2d 18 (1970) in which the court held that for the purposes of the Federal Firearms Act the status requirement of having been convicted of a felony was fulfilled although the conviction was pending on direct appeal.

■ We think the most apposite precedents to interpretation of the term "conviction" in the PMPA are found in the decisions interpreting the disabilities sufferable upon conviction under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* In

that Act the term "conviction" is used without elaboration or definition and the courts have quite uniformly held that a conviction which is on direct appeal does not subject the immigrant or alien to deportation or other disabilities. The cases clearly distinguish between a situation where the conviction is pending for direct review by an appellate court, and one which is under collateral attack by motion, petition for habeas corpus, or any other like proceeding. These cases also make it clear that when interpreting the word "convicted" as used in a federal statute, Congress intended the term to be given meaning in light of federal law and policies, rather than on the basis of all the peculiarities of state laws and various statutes. Some of the pertinent cases are: *Will v. Immigration and Naturalization Service*, 447 F.2d 529 (7th Cir. 1971); *Aguilera-Enriquez v. Immigration and Naturalization Service*, 516 F.2d 565 (6th Cir. 1975); *Marino v. Immigration and Naturalization Service*, 537 F.2d 686 (2d Cir. 1976); *Morales-Alvarado v. Immigration and Naturalization Service*, 655 F.2d 172 (9th Cir. 1981); *Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955).

■ Like an action under the Immigration and Nationality Act, an action under the PMPA is a civil action and it is important that the term "conviction" be given the meaning intended by Congress. With respect to the PMPA, we find no guidance in the legislative history (95th Cong. 1978 U.S. Code Cong. & Ad. News 873 *et seq.*) explicitly referring to the term "conviction." The legislative history, pages 875–877, nevertheless makes it clear that the statute was enacted primarily to level out the disparity in bargaining power between the franchisor and the franchisee, and to minimize the use of power of termination as a weapon in the hands of the franchisor. It speaks of termination as being an extreme remedy and fundamentally punitive. In the light of the legislative history and the failure of Congress to define or limit the term "conviction," we think it to be quite arguable that in this context "conviction" means a final conviction and that this contention is a fair ground for litigation.

Defendant concedes that if conviction in the trial court is all that is required, the reversal of the conviction on appeal would not place the plaintiffs in a position of being entitled to any redress.

The affidavits on file demonstrate that the termination of the franchise would be quite drastic for the franchisee and there is little to support any claim of hardship to Exxon other than being compelled to continue in a relationship with a man who, at this point, stands convicted of a felony involving moral turpitude. The balance of hardships favors plaintiffs.

It has not been suggested by anyone that the distributorship agreements should be interpreted differently from the federal statute or that evidence is available to resolve any ambiguity that exists in the word "conviction" in the agreements.

No evidence has been presented which would justify the fixing of other than a nominal bond. If a larger bond is justified, Exxon may, within 20 days, move to increase the bond required by this order.

In consideration of the premises,

**IT HEREBY IS ORDERED** that the defendant Exxon Company, U.S.A., and its officers, agents and employees be, and they hereby are, restrained and enjoined from terminating any gasoline, diesel or motor fuel distributorship contracts that said defendant may presently have with plaintiffs Humboldt Oil Co., Inc. and J. R. Mastelotto, said injunction to remain in effect during the pendency of this action until entry of final judgment or until sooner dissolved or modified by further order of this court.

**IT IS FURTHER ORDERED** that defendant Exxon Company, U.S.A., and its officers, agents and employees, continue to comply with all the terms and provisions of the said contracts and agreements, subject to the further order of the court.

**IT IS FURTHER ORDERED**, as a condition to injunctive relief, that plaintiffs shall file a bond in the amount of One Thousand Dollars ($1,000.00) to indemnify defendant for such damages as it may sustain by reason of the issuance of this preliminary injunction should it ultimately be determined that the injunction should not have been issued.