HUMBOLDT OIL CO., INC., and J.R.
Mastelotto, Plaintiffs-Appellees,

v.

EXXON COMPANY, U.S.A.,
Defendant-Appellant.

No. 82–4134.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1982.

Decided Dec. 28, 1982.

David M. Heilbron, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant-appellant.

Peter L. Spinetta, Bell, Rosenberg, Spinetta & Randick, Oakland, Cal., for plaintiffs-appellees.

Before SKOPIL and FLETCHER, Circuit Judges, and SCHWARTZ,* District Judge.

SKOPIL, Circuit Judge:

This is an appeal of a preliminary injunction, *Humboldt Oil Co., Inc. v. Exxon Co., U.S.A.,* 532 F.Supp. 896 (D.Nev.1982), issued pursuant to provisions of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801 *et seq.* We reverse and vacate the preliminary injunction.

## BACKGROUND

Humboldt Oil Co., Inc. (Humboldt) and J.R. Mastelotto (Mastelotto) sell motor fuel and other products under franchise agreements with Exxon, Inc., U.S.A. (Exxon). Mastelotto is the owner of Humboldt, through another corporation, and is the franchisee under all the agreements with Exxon.

On July 28, 1981 Mastelotto was found guilty of ten counts of mail fraud and fraud by wire. The "essence of the crimes charged in the indictment was that Mastelotto sold fraudulently labeled and branded used motor oil to the public as major brand 'virgin' motor oil." 532 F.Supp. at 898. A judgment of conviction and sentence were entered against Mastelotto. An appeal is pending.

Shortly thereafter, Exxon notified Humboldt and Mastelotto that the respective distributorship agreements were terminated. Exxon's sole reason for the termination was "the conviction of J.R. Mastelotto of a felony involving moral turpitude."

Humboldt and Mastelotto sought relief pursuant to 15 U.S.C. § 2805 to restrain Exxon from terminating the distributorship contracts. The district court rejected the arguments that (1) Humboldt and not Mastelotto was the franchisee; (2) Mastelotto was not convicted of offenses that involved moral turpitude; and (3) Mastelotto's conviction did not touch upon the franchise relationship and therefore did not provide a reasonable basis for termination. Nonetheless, the district court held that another argument was sufficiently serious to raise a fair ground for litigation and to warrant a preliminary injunction:

> "The only argument made by plaintiffs which has given us any concern as presenting an issue involving a fair ground for litigation is the contention that Mastelotto's conviction, which is presently pending on appeal before the U.S. Court of Appeals for the Ninth Circuit, does not constitute a conviction within the meaning of 15 U.S.C. § 2802(c)(12). This contention involves a matter of statutory interpretation with respect to whether the word 'conviction' should be held to mean final conviction, or whether conviction in the trial court is alone sufficient."

532 F.Supp. at 899.

Exxon appealed from the grant of preliminary relief, contending that the district court erred as a matter of law in its interpretation of 15 U.S.C. § 2802(c)(12).

## STANDARD OF REVIEW

The issuance of a preliminary injunction lies within the discretion of the district court. The injunction will be reversed only if the district court relied on an erroneous legal premise or abused its discretion. *Wright v. Rushen,* 642 F.2d 1129,

---

* The Honorable Edward J. Schwartz, Senior United States District Judge for the Southern District of California, sitting by designation.

1132 (9th Cir.1981). Legal error occurs if the court does not employ the appropriate legal standards, or if, in applying the appropriate legal standards, the court misapprehends the law with respect to the underlying issues in litigation. *Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 752 (9th Cir.1982).

## DISCUSSION

### A. *Statutory Framework*

Congress enacted the Petroleum Marketing Practices Act to protect "franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Ad. News 873, 874 (Senate Report). The Act prohibits termination of any franchise except on the basis of specifically enumerated grounds and upon compliance with notice requirements. 15 U.S.C. §§ 2802(a), (b)(1). Termination is proper only upon the occurrence of an event which is relevant to the franchise relationship and which makes termination reasonable. 15 U.S.C. § 2802(b)(2)(C). Section 2802(c) provides a non-exhaustive list of events which qualify as reasonable grounds for termination. One such event is conviction of the franchisee of any felony involving moral turpitude. 15 U.S.C. § 2802(c)(12). Exxon's notice of termination was based upon this provision.

The Act provides that a franchisee may bring an action to prevent termination if the franchisor failed to comply with the statutory requirements. 15 U.S.C. § 2805. Preliminary injunctive relief is available if the franchisee shows that the franchise has been terminated, the hardships imposed upon the franchisee by termination are greater than the hardships imposed on the franchisor, and that there are sufficiently serious questions going to the merits to make such questions a fair ground for litigation. 15 U.S.C. § 2805(b)(2).

Here, the district court found that Exxon complied with the notice requirements, that Mastelotto was the franchisee under the Act, and that the crime committed was a felony involving moral turpitude. The court correctly identified the standards for injunctive relief under the Act. The court erred, however, in its interpretation and application of the statute.

### B. *Statutory Construction*

Neither the Act nor the legislative history specifically defines "conviction." When Congress fails to define its terms and the legislative history sheds no light on the question presented, our approach is to construe the statutory language in accordance with its purpose. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508, 516 (1979); *Burroughs v. Operating Engineers Local Union No. 3,* 686 F.2d 723, 727 (9th Cir.1982). We are guided not by a single sentence but must "look to the provisions of the whole law, and to its object and policy." *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525, 533 (1975).

The PMPA strikes a delicate balance between the interests of the participants in a petroleum marketing franchise relationship. *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1220 (7th Cir.1982). Congress sought to reduce the disparity of bargaining power between the franchisee and the franchisor and prevent harsh consequences of sudden and unreasonable termination. *See* 123 Cong.Rec. 10386 (1977) (remarks of Rep. Mikva). The Act provides specific grounds for termination that are intentionally broad and flexible and yet are intended to prevent arbitrary or discriminatory terminations. *Brach,* 677 F.2d at 1220.

The events listed in section 2802(c) are commercial reasons why a franchisor would be justified in terminating a franchise. The three events which involve fraud—fraudulent activity, adulteration of oil products, and conviction of a felony involving moral turpitude—are non-arbitrary and non-discriminatory reasons for termination. The exceptions reflect an intent to allow reasonable business judgments by the franchisor. *Veracka v. Shell Oil Co.,* 655 F.2d 445, 448 (1st Cir.1981).

Good faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practices undermines the entire franchise relationship. Conviction in the trial court provides a reasonable basis for such a belief. The Act does not provide a franchisee with total protection against termination but only with protection against unreasonable or arbitrary termination. The franchisee need not lose all possible appeals before the franchisor might reasonably think him untrustworthy.

As remedial legislation, the Act must be given a liberal construction consistent with its goal of protecting franchisees. *See United States v. Bacto-Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726, 736 (1969). Nonetheless, the Act must not be interpreted inconsistently with its plain language and outside its logical boundaries. *See Kostantas v. Exxon Co., U.S.A.,* 663 F.2d 605, 606 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2302, 73 L.Ed.2d 1305 (1982). The district court erred in holding that the definition of the term "conviction" raised a fair ground for litigation sufficient to warrant injunctive relief.

### C. *Analogous Statutes*

The district court relied upon cases interpreting the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* This circuit has held that a conviction which is on direct appeal does not subject the alien to deportation or other disability. *E.g., Morales-Alvarado v. Immigration and Naturalization Service,* 655 F.2d 172 (9th Cir.1981).

We are not persuaded that the I & NS cases provide apposite precedent for the interpretation of the term "conviction" as used in the PMPA. The Immigration Act imposes harsh consequences for aliens convicted of crimes. Deportation is allowed only after exhaustion of direct appeal in order to fully protect the alien's freedom in this country and to allow the alien to prosecute the appeal. *See Costello v. I & NS,* 376 U.S. 120, 128, 84 S.Ct. 580, 585, 11 L.Ed.2d 559, 564 (1964).

Here, we are faced with the interpretation of an Act intended to regulate commercial dealings between individuals. Termination of a franchise in some instances may be severe and drastic. Congress sought to take away the franchisor's ability to utilize the threat of termination. Congress also recognized that certain exceptions should exist, particularly when the franchise relationship is undermined by proscribed activities of the franchisee. We hold that the intent of the Act is fulfilled by interpreting the term "conviction" to be conviction by the trial court. *Cf. United States v. Liles,* 432 F.2d 18, 20 (9th Cir.1970) (under the Federal Firearms Act, one obtains the status of convicted felon though the conviction is on appeal).

### D. *Other Grounds*

Appellants argue that even if we interpret conviction to mean conviction by the trial court, there are other issues that raised sufficiently serious question to merit injunctive relief. We disagree.

First, Mastelotto argues that his conviction was not for a felony involving moral turpitude. Intent to defraud is an element of both mail fraud and fraud by wire. *United States v. Diggs,* 649 F.2d 731, 736 (9th Cir.), *cert. denied* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). Crimes in which fraud is an ingredient involve moral turpitude. *Winestock v. I & NS,* 576 F.2d 234, 235 (9th Cir.1978).

Second, Mastelotto and Humboldt argue that the conviction is not a reasonable cause for termination under section 2802(b)(2)(C) since there is no showing that the conviction rendered the franchisee unfit to continue the contractual obligations. The Act explicitly provides that a conviction for a felony involving moral turpitude is the kind of event that is a reasonable cause for termination. Congressional intent could not be clearer.

### CONCLUSION

Under the Petroleum Marketing Practices Act, Congress intended that conviction

mean conviction in the trial court. There are no questions which present a fair ground for litigation sufficient to warrant preliminary injunctive relief.

Accordingly, the decision of the district court is REVERSED and the preliminary injunction is VACATED.