Mr. Alan Charnes, Director Department of Revenue 416 Capitol Annex 1375 Sherman Street Denver, CO 80261
Dear Mr. Charnes:
I am writing in response to the request of your office for a formal legal opinion concerning whether the Lottery Division must revoke a sales agent's license when the sales agent has been convicted of a felony in a foreign jurisdiction.
QUESTION PRESENTED AND CONCLUSION
1. Pursuant to sections 24-35-206(2)(a)(II) and (4)(b), C.R.S. (1982), can the Lottery revoke a license, or deny an application for a license, before a direct appeal of the conviction is completed?
 Pursuant to these sections, the Lottery Division cannot revoke the license of a lottery sales agent, or deny an application for a license, until the direct appeals process is completed.
2. Pursuant to sections 24-35-206(2)(a)(II) and (4)(b), must the Lottery revoke a license, or deny an application for a license, on the ground that a licensee or applicant has been convicted of a felony in a foreign jurisdiction?
 Yes. The Lottery Division must revoke a license, or deny an application for a license, if the licensee or applicant has been convicted of a felony in a foreign jurisdiction.
3. Does revocation of a license solely for conviction of a felony deny the licensee either due process or equal protection?
 No. License revocation based solely on a felony conviction does not violate constitutional requirements.
ANALYSIS
1. Licensure of lottery sales agents is governed by section24-35-206, C.R.S. (1982). Section 24-35-206 prohibits certain persons from holding sales agent's licenses. Section24-35-206(2)(a)(II) requires the Lottery Division to revoke a license if the licensee is convicted of any felony. Section 24-35-206(4)(b) requires the Lottery to deny a license if the applicant has been convicted of a felony.
The answer to the first question depends upon when a conviction is deemed final. Whether a conviction is final is determined by the factual and statutory contexts. In criminal matters, convictions are usually final prior to completion of direct appeals. In People v. District Court, 192 Colo. 375559 P.2d 235 (1977), the supreme court held that conviction is final under the Habitual Criminal Act after the motion for new trial has been decided. In People v. District Court,191 Colo. 558, 554 P.2d 1105 (1976), for the purpose of using prior convictions which are on appeal for sentencing considerations, the term "convicted" was defined to mean convicted upon trial. Under the bail bond statute conviction occurs upon the entry of a guilty verdict following trial.People v. Bartsch, 37 Colo. App. 52, 543 P.2d 1273
(1975).
In civil matters in Colorado in which a person's rights are affected by conviction of a felony, conviction is not final until direct appeals have been exhausted. Hummel v. Board ofChiropractic Examiners of Colorado, 103 Colo. 476, 87 P.2d 248
(1939). In Hummel the court analyzed a statute under which the chiropractic board could revoke a license for "conviction of a crime involving moral turpitude." In the administrative context, the court defined the word "conviction" as "proof of the final and conclusive conviction of a crime of the class mentioned by the statute. . . ."Id. at 248 (emphasis added).
Webster's Third New International Dictionary(Unabridged), in pertinent part, defines "final" as:
 2. being a court finding that is conclusive as to jurisdiction and precluding the right to appeal to or continue the case in any other court upon the merits — often used in the phrase final and conclusive.
Webster's defines "conclusive" as:
 Belonging to a close or termination as (a): forming an end or termination, (b) putting an end to debate or question esp. by reason of irrefutability. . . .
The court's use of the phrase "final and conclusive" expresses the court's intention to limit the definition of "convictions" in administrative proceedings to those convictions in which the time for direct appeal has passed or the direct appeal has been completed.
In a subsequent civil case, the Colorado Supreme Court held that there is no wrongful criminal conduct until appellate review is completed. Read v. Read, 119 Colo. 278,202 P.2d 953 (1949). In Read, the court held that a wife was entitled to support payments until the appeal of her murder conviction was completed. The court stated:
 Here there is no wrongful conduct on plaintiff's part yet established for, notwithstanding the fact that she twice has been convicted of murder in the second degree, nevertheless, if upon review in this court, the judgment of conviction is reversed, she has not been convicted of a felony for which defendant could maintain an action in divorce. . . .
Read v. Read, 119 Colo. at 284, 202 P.2d at 957.
Other jurisdictions have employed the rationale used by the Colorado Supreme Court. For example, in Humboldt Oil Co.,Inc. v. Exxon Co., USA, 532 F. Supp. 896 (N.D. Cal. 1982), the court refused to terminate a franchise agreement which contained a provision that permitted the franchisor to terminate the franchise if the franchisee was convicted of a felony involving moral turpitude. The court narrowed the definition of conviction to final conviction after appeal. Id. at 901.
Based on the rationale of the Hummel and Read
cases, conviction must be defined as conviction after exhaustion of direct appeals. A lottery sales license cannot be revoked or denied if a direct appeal of a criminal conviction is pending.
2. The next question is whether the Lottery Division must revoke a license, or deny an application for license, if the licensee or applicant has been convicted of a felony in a foreign jurisdiction. The answer to the question turns upon whether the phrase "convicted of any felony" in section 24-35-206(2)(a)(II) includes a foreign conviction.
Several old Colorado cases held that the phrase "conviction of a felony" did not include foreign convictions. People v.Enlow, 135 Colo. 249, 310 P.2d 539 (1957); People v.Laska, 101 Colo. 221, 72 P.2d 693 (1937); Peoplev. Brayton, 100 Colo. 92, 65 P.2d 1438 (1937).
More recent cases have concluded that felony convictions include foreign convictions. In the case of Lacey v. People,166 Colo. 152, 442 P.2d 402 (1968), the court addressed the meaning of the word "felony" contained in C.R.S. 1963, 154-1-1. The court held:
 The word "felony" as used in our statute includes any crime in a sister state which carries with it as a possible penalty, incarceration in the state penitentiary. . . .
Id. at 406. The court concluded that foreign convictions were admissible in Colorado courts to impeach the credibility of witnesses.
In People v. Apodaca, 668 P.2d 941 (Colo.App. 1982),cert. granted, August 29, 1983, the court extended the holding in Lacey to military convictions. The court concluded that military convictions are admissible in Colorado if the conviction is for an offense that would be punishable as a felony under Colorado law.
Lacey and Apodaca are in accord with the modern trend permitting use of foreign convictions in state proceedings. See Hayes v. Williams, 341 F. Supp. 182
(D.C. Tex. 1972); Keenan v. McGuane, 13 Ill.2d 520,150 N.E.2d 168 (1958); Peach v. Goins, 575 S.W.2d 175
(Mo. 1978). Each of these cases held that the fact of conviction was more important than the jurisdiction where the conviction was imposed.
The legislative history of the lottery statute also supports the position that foreign convictions are included in the phrase "convicted of any felony" as used in section 24-35-206. The legislative history is replete with comments that the Lottery Division must protect the security and integrity of the lottery by guarding against infiltration by criminal elements. The legislature's concern is exemplified by its decision to control the grounds for license revocation. Initially, grounds for revocation of licenses were not contained in the senate version of S.B. 119, the bill which established the lottery. Rather, the establishment of the grounds was left to the Lottery Commission. The House version contained the grounds for revocation. At the conference committee, the Senate agreed that the grounds for revocation should be included in the statute. The conference participants concluded that the legislature must establish and control the grounds for revocation. Implicit in this discussion is the legislature's overriding concern that the criminal element must be kept out of lottery activities.[1] Given the legislature's concern about the security and integrity of the lottery, limiting the term "any felony" to convictions in Colorado state courts would not comport with legislative intent.
Based upon the most recent case law and legislative history, I conclude that the term "felony" as used in section 24-35-206
includes convictions of felonies in foreign jurisdictions. If a licensee or an applicant has a felony conviction in a foreign jurisdiction, the license must be revoked, or the application must be denied.
3. The Lottery Division has the right to prevent convicted felons from holding a lottery license when the legislature finds that the exclusion of convicted felons is a reasonable means for achieving a legitimate state aim. DeVeau v. Braisted,363 U.S. 144, 4 L.Ed.2d 1109, 80 S.Ct. 1146 (1960). In this instance, the legitimate state goal is preventing criminal elements from infiltrating lottery operations.
The legislature repeatedly expressed concern about preventing criminal influence on the lottery. At the House Committee on State Affairs meeting of March 16, 1982, committee members noted that prevention of corruption was exceptionally important. The legislative intent was expressed in several ways during the course of legislative hearings. First, the lottery statute requires that at least three persons with accounting, legal, and law enforcement background must be appointed to the commission. According to the testimony at House State Affairs meeting, the requirement that a lawyer, an accountant, and a law enforcement official be on the commission was placed in the statute to help the lottery avoid infiltration of corrupt influences.[2]
Second, an amendment limiting investigation of lottery contractors was defeated. Again, the expressed rationale was that the lottery must do all that is necessary to keep anyone with a criminal background out of the lottery in order to maintain the lottery's integrity.[3]
Third, the legislature received testimony from Richard Nathan, former director of the Colorado Organized Crime Strike Force. Mr. Nathan testified that the licensees would handle and disburse a significant amount of cash. According to Nathan, this control over disbursement of funds would increase the potential for individual exploitation and systems corruption.[4]
Fourth, the legislature maintained control over grounds for denial, suspension, or revocation of license. The senate version of S.B. 119 gave discretion to the Lottery Commission to establish standard for revocation or suspension of sales agent licenses. The House version placed the grounds for revocation or suspension in the statute. The House version was adopted by the conference committee. According to the testimony at the conference committee meeting, the legislature wanted to maintain control over the grounds for revocation and suspension of licenses. Accordingly, the legislature placed grounds for revocation, suspension and denial of licenses in the statute.[5] Implicit in the discussion was the legislative desire to maintain tight control over licensure requirements to insure exclusion of the criminal element. Based upon the legislative history, revocation or denial of a license for a felony conviction is rational. Cf. Citizensfor Free Enterprise v. Department of Revenue, 649 P.2d 1054,1066 (Colo. 1982).
Excluding convicted felons from certain types of employment is commonplace. As noted in DeVeau v. Braisted:
 Barring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital areas. Federal law has frequently and of old utilized this type of disqualification.
Id. 158-159. Classification based upon a person's status as an ex-convict is not suspect. Watson v.Cronin, 384 F. Supp. 652 (D. Colo. 1974). Since there is no suspect classification, the rational basis test must be employed.F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415,40 S.Ct. 560, 561, 64 L.Ed.2d 989 (1920). The classification must be fair, reasonable, not arbitrary and it must have a fair and substantial relation to the object of the legislation.Id.
Given the nature of the Lottery Division and the limited scope of the lottery sales agent license, the law is rational. The Lottery Division operates games of chance for the benefit various state and local programs. Because a state agency operates games which in the past have been associated with unsavory persons or organizations, the legislature determined that all persons with any felony conviction cannot obtain a sales license. The prohibition remains even when the licensee has been rehabilitated. See section 24-35-206(4)(b), C.R.S. (1982).
While this penalty may seem severe, it must be viewed in the context of what is taken away from the licensee if the license is revoked. The only result of revocation of a lottery license under the statute is the loss of the ability to sell a product which belongs to the state. The licensee is not precluded from engaging in any business.
SUMMARY
The Lottery Division may not revoke a lottery sales agent's license or deny an application for a license, until all direct appeals of a conviction have been exhausted. If the conviction is upheld after completion of the appeals process, the Lottery Division must revoke the sales agent's license or deny the application for a license.
Very truly yours,
 DUANE WOODARD Attorney General
FELONY CONTESTS GAMBLING
Section 24-35-206, C.R.S. (1982)
REVENUE, DEPARTMENT OF Lottery Div.
The Lottery Division may not revoke or deny a license until all direct appeals of a conviction have been completed. If the conviction is upheld the license must be revoked or the application denied.
[1] Conference Committee, April 15, 1982, Senate Committee Room 320A.
[2] House Committee on State Officers, March 16, 1982, House Conference Room F.
[3] Id.
[4] Id.
[5] Conference Committee, April 15, 1982, Senate, Committee Room 320A.