QUESTIONS PRESENTED AND ANSWER Question 1: Does the Medical Practice Act, subsections12-36-117(1)(f) and (h), C.R.S. (2005), allow the Board to take disciplinary action or deny licensure based upon one of the enumerated convictions if that conviction is the subject of a pending appeal?
Answer: Yes. The Medical Practice Act must be construed in conformity with the Board's purpose to protect the public against the "unauthorized, unqualified, and improper practice of the healing arts in this state." § 12-36-102(1). An interpretation of subsections 123-6-117(1)(f) and (h) requiring the Board to await the exhaustion of criminal appeals before imposing disciplinary action or denying licensure would be contrary to this purpose.
Question 2: Is this interpretation consistent with the Opinion of Attorney General Duane Woodard, issued March 12, 1985, which addressed the related question whether the Lottery Division of the Department of Revenue can revoke a license or deny an application for a license before a direct appeal of the conviction is completed?
Answer: No. A portion of the analysis in 1985 AG Opinion was incorrect and is hereby reversed. Under the rules of statutory interpretation, the General Assembly's definition and purpose behind the statute control our statutory analysis of a term.
 RULES OF STATUTORY CONSTRUCTION
This opinion employs the rules of statutory construction applied by courts. In construing a statute, we strive to give effect to the General Assembly's intent and adopt the statutory construction that best effectuates the purposes of a legislative scheme, looking first to the plain language of the statute. See,e.g., Spamer v. Gullette, 113 P.3d 158, 162 (Colo. 2005). Where the statutory language is clear and unambiguous, we do not resort to any further rules of statutory construction. Id. Words and phrases must be read in context and construed according to the rules of grammar and common usage. Where words and phrases have acquired a technical or particular meaning, whether by legislative definition or otherwise, they must be construed accordingly. § 2-4-101.
When the General Assembly adopts a comprehensive regulatory scheme, we construe the legislation as a whole and, where possible, give a harmonious effect to each of its parts. UnitedAirlines, Inc. v. Industrial Claim Appeals Office,993 P.2d 1152, 1157 (Colo. 2000). If the statutory language is unambiguous, we presume the General Assembly meant what it clearly said. Id.
When the legislature defines a term, that definition governs.Colo. Water Conservation Bd. v. Upper Gunnison River WaterConservancy Dist., 109 P.3d 585, 597 (Colo. 2005). Except where the General Assembly plainly evidenced a contrary intent, such a definition controls wherever the term is used throughout that statute. Id. at 598.
 BACKGROUND AND ANALYSIS
At issue here is the following language in the Medical Practice Act ("MPA"), section 123-6-117(1):
 "Unprofessional conduct" as used in this article means:
 (f) Any conviction of an offense of moral turpitude, a felony, or a crime that would constitute a violation of this article. For purposes of this paragraph (f), "conviction" includes the entry of a plea of guilty or nolo contendere or the imposition of a deferred sentence.
 (h) Any conviction of violation of any federal or state law regulating the possession, distribution, or use of any controlled substance, as defined in section 12-22-303(7), and, in determining if a license should be denied, revoked, or suspended, or if the licensee should be placed on probation, the board shall be governed by section 24-5-101, C.R.S. For purposes of this paragraph (h), "conviction" includes the entry of a plea of guilty or nolo contendere or the imposition of a deferred sentence.
Acts or omissions that constitute "unprofessional conduct" under section 12-36-117 form a basis for Board action denying medical licensure to or taking disciplinary action against the license of a physician or physician assistant. See §§ 12-36-104, -116(1)(b), and -118(5).
 The General Assembly has defined the term "conviction" in a number of statutes, and the meaning of the term "conviction" varies depending upon the statute in which it is used and the purpose behind the statute. See People v. Hampton, 876 P.2d 1236, 1239 (Colo. 1994). The purpose of the MPA is to protect the public against the "unauthorized, unqualified, and improper practice of the healing arts in this state." § 12-36-102(1). The MPA must be construed in conformity with this declaration of purpose, id., and the term "conviction" as used in subsections 12-36-117(1)(f) and (h) must be construed in conformity with the Board's public protection purpose.
Subsections 12-36-117(1)(f) and (h) partially define the term "conviction" to include "the entry of a plea of guilty or nolo contendere or the imposition of a deferred sentence." See § 123-6-117(1)(f), (h). The General Assembly was silent, however, as to when a criminal charge that proceeds to trial becomes a conviction. In furtherance of the MPA's purpose and the Board's duty to protect the public, however, the term "conviction" in the MPA should be interpreted to include a finding of guilt by the bench or by jury and sentencing, even if appeals have not been exhausted. See § 12-36-102(1). The General Assembly's inclusion of the entry of a plea of guilty or the imposition of a deferred sentence within the definitions at issue supports this interpretation.
The phrases "nolo contendere" and "imposition of a deferred sentence" have particular meanings found outside the MPA. A nolo contendere plea, also known as an "Alford"[1] plea, is a common law plea that means "I do not wish to contend." It may be entered with the court's consent and is allowed liberally. Colo. R. Crim. P. 11; § 16-7-205 (listing authorized pleas); People v.Darlington, 105 P.3d 230, 233 (Colo. 2005). Unlike a guilty plea, a nolo contendere plea does not estop the defendant from denying fault in a civil action based upon the same facts. Id.
Nevertheless, pursuant to subsections 12-36-117(1)(f) and (h), a physician or physician assistant who entered a plea of nolo contendere would be estopped from denying accountability under the MPA.
Imposition of a deferred sentence is created and authorized under section 18-1.3-102(1). To impose a deferred sentence, a court must accept entry of a defendant's guilty plea. The court may then continue the case for a period of time until the defendant fully complies with probationary conditions. §18-1.3-102(1). Upon the defendant's full compliance with probationary conditions, "the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice." § 18-1.3-102(2). Following successful completion of a deferred sentence, "there no longer exists a plea of guilty to a felony, and there never existed a judgment of conviction." Weberv. Colo. State Bd. of Nursing, 830 P.2d 1128, 1133 (Colo.App. 1992). For purposes of the MPA, however, disciplinary action may be imposed or medical licensure denied following entry of a deferred sentence. See § 12-36-117(1)(f) and (h).
Consistent with public protection, the General Assembly defined the term "conviction" as used in the MPA broadly by including the entry of a plea of nolo contendere or the imposition of a deferred sentence in the definition. With respect to the identified offenses, the General Assembly determined that, without requiring admission of guilt to the underlying conduct or even finality of a guilty plea, the fact of conviction provides a reasonable basis for the Board to believe the licensee engaged in unprofessional conduct and subjects physicians to disciplinary action or denial of licensure.
Additionally, whereas other statutes specify that a court must "accept" an individual's guilty or nolo contendere plea, the MPA only requires "entry" of such a plea. Cf. § 12-38.11-11(1)(b) (under statute regulating nurse aides, authorizing discipline of person who has been convicted of a felony or has had a court "accept a plea" of guilty or nolo contendere to a felony). The General Assembly expressed no intention to make "conviction" contingent upon any later occurrence, such as acceptance of the plea, sentencing, final judgment of conviction, motion to withdraw a plea, or, as relevant here, exhaustion of a direct or collateral appeal. Cf. § 42-20-204(5) (term "conviction" means "final conviction" for reporting requirement under transportation of hazardous material permit statute); § 42-20-305(4) (same for transportation of hazardous material route violation statute). Further, the General Assembly chose to make the conviction itself, rather than the underlying conduct, a basis for disciplinary action by the Board. Compare § 12-36-117(1)(f) and (h) (conviction constitutes grounds to discipline a license to practice medicine) with § 12-38-117(1)(l) (grounds for discipline of a nursing license include conduct "constituting a crime" and related to employment as a nurse).
Consistent with the purpose of the MPA, "conviction" as used in subsections 12-361-17(1)(f) and (h) should be interpreted to require only an act that allows the criminal court to enter a sentence, such as the individual's "entry of a plea" or the court's finding or jury's verdict of guilt. Under that reading, the MPA allows the Board to take disciplinary action based upon conviction of one of the identified offenses, even if that conviction is pending appeal. See Lamb v. People,174 Colo. 441, 484 P.2d 798 (1971) (judgment of conviction is presumed valid); accord People v. Tramaglino, 791 P.2d 1171 (Colo.App. 1989).
This interpretation is consistent with section 24-5-101. Under section 12-36-117(1)(h) of the MPA, the Board is governed by section 24-5-101 when determining whether controlled substance-related convictions form a sufficient basis for disciplinary action or license denial. The purpose of section24-5-101 is "to expand employment opportunities for persons who, notwithstanding that fact of conviction of an offense, have been rehabilitated and are ready to accept the responsibilities of a law-abiding and productive member of society." § 24-5-101(2). The effect of that section, when read with the MPA, is that a conviction, in and of itself, is not sufficient to warrant denial or discipline of a license without considering the "pertinent circumstances . . . to determine the moral character of the applicant or licensee." See Colo. Bd. of Med. Exam'rs v.Jorgensen, 198 Colo. 275, 279, 599 P.2d 869, 872 (Colo. 1979). The Board's consideration of these circumstances may occur after a licensee has been found guilty or entered a plea allowing the criminal court to enter a sentence.
The Colorado Supreme Court has taken a similarly broad view of the definition of the word "conviction" in a professional disciplinary context. For example, in People v. Wilson,814 P.2d 791, 792 (Colo. 1991), the Court explained that the hearing board considering an attorney disciplinary proceeding found that, despite the disciplined attorney's assertion that he was "not guilty" of the offense for which he received a deferred sentence, the attorney nevertheless had "no defense" to the Grievance Committee's disciplinary charges related to the plea. In Peoplev. Barnthouse, 941 P.2d 916 (Colo. 1997), the Court found that a lawyer must report to the Grievance Committee a guilty plea followed by a deferred sentence, even though the provision defining reportable "convictions" to include a deferred sentence was adopted after the lawyer pled guilty. The Court reasoned:
 The purpose of lawyer discipline proceedings is the protection of the public and the requirement that a lawyer report his or her criminal conviction is in furtherance of that purpose. A guilty plea followed by a deferred judgment was therefore a conviction for reporting requirements under C.R.C.P. 241.16(b) prior to the enactment of C.R.C.P. 241.16(h) [defining "conviction" as used in the Rules to include a deferred judgment and sentence].
Id. at p. 918.
An interpretation of subsections 12-36-117(1)(f) and (h) that required the Board to await exhaustion of appeals prior to imposing discipline upon a physician's license or denying licensure to a physician would not be consistent with the broad definition of "conviction" defined therein to include pleas of nolo contendere and imposition of deferred sentence. Further, such an interpretation would not be consistent with the MPA and Board's purpose of public protection.
 THE 1985 AG OPINION
In 1985, this office issued a Formal Opinion addressing, in part, whether the Lottery Division of the Department of Revenue can revoke a license or deny an application for a license before a direct appeal of the conviction is completed. March 12, 1985, Opinion of Attorney General Duane Woodard (1985 WL 194206) ("1985 AG Opinion"). The 1985 AG Opinion concluded that the Lottery Division could not revoke a license or deny an application for a license based upon a felony conviction until the direct appeal for that felony conviction was completed. At issue in the 1985 AG Opinion was language allowing the agency to revoke a license upon finding that the licensee "Has been convicted of any felony or gambling-related offense." See 1985 AG Opinion, p. 1; 1982 Colo. Sess. Laws, ch. 100, p. 375-76, § 24-352-06(2)(a)(II).
In construing the term "conviction" in that statute, the 1985 AG Opinion addressed when a conviction becomes final. The 1985 AG Opinion observed that "In criminal matters, convictions are usually final prior to completion of direct appeals," while "[i]n civil matters in Colorado in which person's rights are affected by conviction of a felony, conviction is not final until direct appeals have been exhausted." 1985 AG Opinion, p. 2.
For its statement regarding criminal matters, the 1985 AG Opinion relied on two criminal sentencing cases: People v. Dist.Court, 559 P.2d 235, 236 (Colo. 1977) (holding that a defendant may be adjudicated as a habitual offender based upon convictions for which appeals are pending, and that any other interpretation would be "clearly inconsistent with the obvious purpose of the statute, which is to punish repeat offenders"), and People v.Dist. Court, 554 P.2d 1105 (Colo. 1976) (holding that in light of the purpose and procedures under the relevant statutory scheme, a prior conviction may be considered an aggravating factor in a death penalty sentencing hearing even if that prior conviction is subject to appeal).
As a basis for its opinion regarding civil matters, the 1985 AG Opinion relied on Hummel v. Bd. of Chiropractic Examiners,87 P.2d 248 (Colo. 1939), and Read v. Read, 202 P.2d 953 (Colo. 1949). In Hummel, the Court considered a licensing statute that allowed an agency to take disciplinary action for "the conviction of a crime involving moral turpitude." 87 P.2d at 248. There, the licensee was convicted of petty larceny at trial, prevailed on appeal, and the convictions were reversed. The agency in Hummel
proceeded with a disciplinary hearing, even after the convictions were reversed. The Court determined that the agency lacked jurisdiction to proceed and, by pursuing the case after the convictions were reversed, the agency "undertook to function as a substitute tribunal" for the criminal court. 87 P.2d at 250. The Court stated that "proof of the final and conclusive conviction of a crime . . . would, of course, be sufficient ground for suspension or revocation of a license." 87 P.2d at 248.
Likewise, in Read, a marriage dissolution case, the Court considered whether the wife had committed "wrongful conduct," which would relieve the husband's obligation to support her. The Court concluded that, though the wife had been convicted twice, "if upon review in this court the judgment of conviction is reversed, she has not been convicted of a felony for which defendant could maintain an action in divorce." Read, supra,202 P.2d at 957.
The 1985 AG Opinion also found support from Humboldt Oil Co.,Inc. v. Exxon Co., 532 F.Supp. 896 (D.C.Nev. 1982) ("HumboldtI"), rev'd, 695 F.2d 386 (9th Cir. 1982). In Humboldt I, the district court interpreted a franchise contract provision that allowed the franchisor to terminate the contract upon "conviction of the franchisee of any felony involving moral turpitude," language from the Petroleum Marketing Practices Act,15 U.S.C. § 2801, et seq. Humboldt I, 532 F.Supp. at 899; see15 U.S.C. § 2802(c)(12). The franchisee argued that his trial court conviction was not a conviction because a direct appeal was pending, and the court agreed. Considering the statute's intent to level bargaining power disparity and minimize franchisors' use of termination as a weapon, the court held that the term "conviction" means final conviction after the direct appeal resolved. Humboldt I, 532 F.Supp. at 901. The court's conclusion was based on federal law and recognized that interpretation should be based on overall statutory intent.
On appeal, the Ninth Circuit reversed Humboldt I in HumboldtOil Co., Inc. v. Exxon Co., supra ("Humboldt II"). That reversal is not discussed in the 1985 AG Opinion.
The court in Humboldt II reconsidered the statutory intent to protect franchisees against unreasonable or arbitrary termination. The court observed that "Good faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practices undermines the entire franchise relationship. Conviction in the trial court provides a reasonable basis for such a belief." Humboldt II, 695 F.2d at 389. Thus, the court held the remedial intent of the Petroleum Marketing Practices Act is fulfilled by interpreting "conviction" to mean conviction by a trial court, even when an appeal is pending.Id.
A recent Colorado administrative law judge ("ALJ") order discussed the 1985 AG Opinion and rejected its conclusion. Order Granting Summary Judgment, In the Matter of DisciplinaryProceedings against the Bail Bonding License of Steven PatrickMares, Sr., Division of Administrative Hearings,[2] Case Number IN 2001-005 ("Mares").
In Mares, the licensee entered into a deferred sentence, but the criminal court revoked it and entered a judgment of conviction, which the licensee appealed. While the appeal was pending, the agency sought disciplinary action based upon the conviction under its statute, which defined as grounds for discipline of a bail bonding license: "Conviction of a felony within the last ten years, regardless of whether the conviction resulted from conduct in or conduct related to the bail bond business." 1996 Colo. Sess. Laws, ch. 231, p. 1184, §12-7-106(1)(e). The agency moved for summary judgment as to the existence of a felony conviction.
In granting the agency's motion, the ALJ found the 1985 AG Opinion "is not persuasive and relies in part on a judicial interpretation which has been overturned [Humboldt I]."Mares, Order Granting Summary Judgment and Initial Decision (February 27, 2002), p. 5. Though the bail bonding statute lacked a "direct statement of legislative intent," the ALJ found that the statute evinced the legislature's determination that a felony conviction "renders bail bonding agents unfit to obtain or maintain their licenses," and, further, that the purposes of the statute do not require formal actions of a judgment and sentencing. Id. at p. 4. The ALJ thus concluded that the term "conviction" as used in the statute refers to the court's acceptance of a guilty plea and that a conviction occurs irrespective of whether any subsequent judgment of conviction is on appeal. Id. at p. 3.
While this Office agrees with portions of the 1985 AG Opinion's analysis based on Colorado authority, we conclude that a portion of the analysis in 1985 AG Opinion was incorrect. Insofar as that analysis differs from the one here, we emphasize that, under the rules of statutory interpretation, the General Assembly's definition of a term controls wherever the term is used throughout the statute. See Colo. Water Conservation Bd. v.Upper Gunnison River Water Conservancy Dist., supra. In light of the General Assembly's multiple definitions of terms like "conviction" in various statutes, we support statutory analysis that focuses on the statute in which it is used and the purpose behind the statute. See People v. Hampton, supra.
 CONCLUSION
In conformity with the purpose of the MPA, the Board is authorized to take disciplinary action against or deny application for a license to practice medicine based upon one of the convictions enumerated in the statute, even if that conviction is the subject of a pending appeal. To the extent that this interpretation is inconsistent with the 1985 AG Opinion, the 1985 AG Opinion is reversed.
Issued this 5th day of September, 2006.
 __________________________ JOHN W. SUTHERS Colorado Attorney General
[1] See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160,27 L.Ed.2d 162 (1970).
[2] The Division of Administrative Hearings is now known as the Office of Administrative Courts. *Page 1