Robert C. LEWIS, Appellant,

v.

EXXON CORPORATION.

No. 83–1188.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 1983.

Decided Aug. 30, 1983.

Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 82–03088).

Robert P. Watkins, Washington, D.C., with whom F. Lane Heard, III, Washington, D.C., was on the pleadings for appellant.

Michael A. Schlanger, Washington, D.C., with whom John R. Metz, Washington, D.C., was on the pleadings for appellee.

Before WILKEY and BORK, Circuit Judges, and MacKINNON, Senior Circuit Judge.

BORK, Circuit Judge:

The Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2802(a) (Supp. V 1981), limits the power of petroleum companies to terminate or refuse to renew dealer franchises. One ground for which termination is permitted by 15 U.S.C. § 2802(c)(12) (Supp. V 1981) is "the conviction of the franchisee of any felony involving moral turpitude." The question here is whether the pendency of an appeal prevents termination until the conviction has been affirmed. We hold that it does not.

I.

Appellant Robert C. Lewis was Chairman of the D.C. Alcoholic Beverage Control Board when he became a franchised dealer of Exxon Corporation with a three-year lease on December 10, 1981. On April 5, 1982, Lewis was found guilty of bribery and conspiracy by a federal jury. The judgment was affirmed August 19, 1983. *United States v. Lewis,* 716 F.2d 16 at 17 (D.C. Cir.1983). Exxon notified Lewis that his franchise would be terminated effective August 20, 1982. The termination date was extended while Lewis pursued his internal appeals before Exxon's dealer relations committees. He was finally notified that the franchise would be terminated on November 1, 1982. Shortly before the termination date, Lewis commenced this suit un-

der the PMPA, contending that he had not been "convicted" of a felony within the meaning of PMPA because his appeal from his criminal conviction was pending. The district court, on a motion for summary judgment, decided that the word "conviction" in the PMPA meant the judgment entered after a jury finding of guilt. The court therefore ruled against Lewis but stayed its order pending appeal to this court. Exxon moved in this court to vacate the stay and for summary affirmance. Exxon represented that if the stay were vacated it would promptly terminate the franchise and would not reinstate Mr. Lewis even if his conviction was ultimately overturned. Instead of ruling on the motion, we heard the case on the merits.

## II.

The PMPA does not define "conviction" and the legislative history sheds no light upon what Congress meant by that term. The only judicial definition of the term "conviction" as used in the PMPA was that given by the Ninth Circuit in *Humboldt Oil Co. v. Exxon Co.,* 695 F.2d 386 (9th Cir. 1982). That court concluded, as do we, that "conviction" means the judgment entered upon the jury verdict and not the final affirmance of that judgment when all direct appeals are exhausted. As the Ninth Circuit said:

> Good faith belief of the franchisor that the franchisee is untrustworthy or engages in fraudulent practice undermines the entire franchise relationship. Conviction in the trial court provides a reasonable basis for such a belief. The Act does not provide a franchisee with total protection against termination but only with protection against unreasonable or arbitrary termination. The franchisee need not lose all possible appeals before the franchisor might reasonably think him untrustworthy.

695 F.2d at 389.

Lewis argues that, because the PMPA was enacted to protect franchisees, the term "conviction" should be interpreted to mean conviction after all direct avenues of appellate review have been exhausted.[1] Invoking a rule of construction that remedial statutes should be broadly interpreted, Lewis argues that the PMPA should be read so as to resolve all doubts in favor of the franchisee. *Cf.* G. Sands, *Statutes and Statutory Construction* ¶ 60.01 (4th ed. 1974) (remedial statutes are liberally construed to suppress the evil and advance the remedy). That canon of interpretation is of little use here. Although the PMPA attempts to prevent arbitrary and unreasonable terminations, it also seeks to preserve intact the franchisor's legitimate freedom to choose with whom it will deal. The one goal is as important as the other. The object is balance. *See generally,* 123 Cong. Rec. 10,383 (1977) (statement of Rep. Dingell); *id.* at 10,386 (statement of Rep. Mikva) (the PMPA attempts to balance the rights of franchisees and franchisors). We have, therefore, no warrant to construe the franchisee's protection so broadly as to undercut the franchisor's protection.

As Exxon points out, conviction in various legal contexts typically means a judgment of guilt entered upon the jury verdict, trial court finding, or guilty plea. *See, e.g., United States v. Liles,* 432 F.2d 18, 20 (9th Cir.1970). We will rehearse only a few illustrations which suggest that the usage of "conviction" as meaning the judgment entered upon the verdict or plea and not the final affirmance upon appeal of that judgment is so common that it is highly likely Congress used the word in that sense. Federal Rule of Criminal Procedure 32(b)(1), for example, provides that "a judgment of conviction" sets forth the "plea, the verdict or findings, and the adjudication and sentence." Federal Rule of Appellate Procedure 4(b) provides that the appeal is taken from that judgment. The Criminal Code provides that the review of a special sentence contained in the judgment must be

1. Because appellant's theory necessarily encompasses review of the conviction by writ of certiorari, the recent affirmance of his conviction by a panel of this court does not in our opinion make this appeal moot.

sought within the time permitted for an "appeal of the conviction." 18 U.S.C. § 3576 (1976). A judgment generally has collateral estoppel effect even though it is on appeal. *United States v. Abatti,* 463 F.Supp. 596, 598–99 (S.D.Cal.1978). Federal Rule of Evidence 609(a) provides that a witness may be impeached with evidence that he has been convicted of a crime. Pendency of an appeal does not render evidence of the conviction inadmissible. *See* Fed.R.Evid. 609(e).

Under the common law, the term "conviction" has, and continues to have, one of two accepted meanings—the jury verdict or the judgment entered following the verdict. *See, e.g., United States v. Gibert,* 25 F.Cas. 1287, 1295 (C.C.D.Mass.1834) (No. 15,204) (Story, Circuit Justice) ("conviction" occurs upon jury verdict of guilty); 4 W. Blackstone, *Commentaries* *362 (same); *Commonwealth v. Lockwood,* 109 Mass. 323 (1872) (meaning depends on the context); *State v. Levi,* 109 W.Va. 277, 278, 153 S.E. 587, 588 (1930) ("conviction" occurs upon entry of judgment); 1 M. Hale, *Pleas of the Crown* 686 (1736) (same). Either common law construction would support our judgment in this case; the construction urged upon us by the appellant is nowhere suggested. It is also clear that the law uses the latter definition of "conviction" even where the result is to impose considerable hardship upon the person convicted. Thus, legislation providing for the exclusion from public office of persons "convicted" of perjury required the removal of a public official while his conviction was on appeal. *See Helena Rubenstein Int'l v. Younger,* 71 Cal. App.3d 406, 139 Cal.Rptr. 473 (1977). A union official is automatically removed from office upon conviction even though he is appealing that conviction. *See International Longshoremen's Ass'n v. Waterfront Commission,* 495 F.Supp. 1101, 1114–15 (S.D.N.Y.), *aff'd in relevant part,* 642 F.2d

666, 671 (2d Cir.1981). This usage of the term "conviction" is almost universal and it is doubtful whether Congress would ascribe an extraordinary meaning to the word without stating that it was doing so.[2]

Lewis' position requires an illogical reading of the statute. At oral argument, counsel for Lewis conceded that only a very small number of convictions are overturned on appeal. This number is even smaller when one considers that convictions are often reinstated upon retrial. Preventing termination for the years it may take to exhaust all direct appeals on the slight chance that the conviction will be overturned would seriously weaken the value of the provision making conviction a ground for termination. But the problem is worse than that.

If the ground for termination is the ultimate veracity of the conviction, there is no reason to draw the line at the exhaustion of all direct appeals. If the conviction were ultimately reversed on a collateral attack, the result would be the same: the franchisee would have been terminated despite the fact that he was no longer a convicted felon. The logic of Lewis' position, though counsel sought to disown it, would prevent termination during all collateral attacks, which is to say that it would prevent termination.

We refuse to attribute an exceptional meaning to the term "conviction" as used in the statute. We hold that the basis for termination in section 2802(c)(12) of the PMPA is not the veracity of the conviction but the fact of conviction.

Although the termination of Mr. Lewis' franchise will undoubtedly work hardship on Mr. Lewis, he was aware that the PMPA would govern his franchise relationship with Exxon. The proper interpretation of the PMPA requires the result we reach

---

**2.** That Congress has in other statutory contexts explicitly defined the term "conviction" to mean the later of the date of the trial court's judgment or of "the final sustaining of such judgment on appeal," adds perhaps conclusive support to our interpretation of the term consistent with its common law and common place meaning. *See, e.g.,* Employment Retirement Income Security Act of 1974, § 411(c)(1), 29 U.S.C. § 1111(c)(1) (1976); Labor-Management Reporting and Disclosure Act of 1959, § 504(c), 29 U.S.C. § 504(c) (1976).

today. The district court's order granting summary judgment to appellee is

*Affirmed.*