45 F.3d 437
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 TEXACO REFINING AND MARKETING INC., a Delaware corporation
Plaintiff-Appellee,
v.
Barry P. DAVIS, Defendant-Appellant.
 Nos. 93-35466, 93-35489, 93-36101.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 1, 1994.
Decided Dec. 29, 1994.
 
 Before: FLETCHER, D.W. NELSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Barry Davis, a former franchisee of three gasoline stations franchised to him by Texaco Refining and Marketing, Inc. ("Texaco"), appeals the district court's grant of Texaco's motion for summary judgment in its action to terminate its franchise relationship with Davis. We have jurisdiction and affirm. We dismiss Davis's other appeals as moot.
 
 
 3
 * Prior to May, 1993, Davis was the franchisee of three Texaco service stations in Salem, Eugene, and Clackamas, Oregon. Each of the stations operated under a separate franchise agreement between Texaco and Davis. Although the franchise agreement for the Eugene station expressly required operation of the station twenty-four hours a day, seven days a week, the Clackamas and Salem agreements did not. Nevertheless, Davis had been operating all of the stations on a twenty-four hours a day, seven days a week basis for several years prior to the events leading to this appeal.
 
 
 4
 In October, 1992, Davis wrote a letter to Texaco representatives requesting that he be permitted as of January 1, 1993 to close his stations for the Sabbath, from sundown on Friday to sundown on Saturday, due to changes in his religious beliefs. Texaco took the position that Davis was required to operate all of his stations on a twenty-four hours a day, seven days a week basis and denied Davis's request. Although Davis and representatives from Texaco met several times throughout the remainder of 1992, their attempts to reach agreement were unsuccessful.
 
 
 5
 Commencing January 1, Davis closed his stations each Sabbath. After sending Davis at least four written warnings that the closures violated his agreements with Texaco and placed his franchises at risk of termination, Texaco brought suit in district court for specific performance of the parties' franchise agreements, which it claimed required twenty-four hours a day, seven days a week operation of all three stations. The district court issued a preliminary injunction requiring Davis to keep his stations open twenty-four hours a day, seven days a week. Davis sought a stay of the preliminary injunction, but the district court denied his motion.
 
 
 6
 After Davis disobeyed the preliminary injunction by closing his gas stations on Friday night and Saturday on the following two weekends, Texaco notified Davis on May 18, 1993 that his franchises would be terminated ten days later due to his violations of the franchise agreements and the preliminary injunction. On May 19, Texaco commenced an action for declaratory judgment that its termination of the franchises was proper and for an injunction requiring Davis to surrender his stations to Texaco. The district court rejected Davis's motion for an order temporarily restraining the termination and granted Texaco's motion for summary judgment. The court held that Davis's noncompliance with the preliminary injunction justified Texaco's termination of the franchises as a matter of law because it constituted a violation of a provision in his franchise agreements that he obey all applicable judicial orders. During the same proceeding, the district court dismissed Davis's counterclaims to Texaco's prior suit for specific enforcement. The court dismissed two of the counterclaims as moot and dismissed the third counterclaim for failure to state a claim.
 
 
 7
 The various decisions made by the district court have resulted in the three appeals consolidated before us. In the "core" appeal, Davis argues that termination of his franchises violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. Secs. 2801-2841, and that the district court erred by dismissing his counterclaims to Texaco's suit for specific enforcement. In separate appeals, Davis also appeals the district court's denial of his motion for an order temporarily restraining the terminations and the district court's grant of the preliminary injunction requiring him to operate his stations on a twenty-four hours a day, seven days a week basis.
 
 II
 
 8
 The PMPA prohibits the termination of a franchise unless the franchisor complies with the Act's notice requirements and terminates for reasons enumerated by the Act. Davis maintains that Texaco's termination was without sufficient notice and without adequate grounds.
 
 
 9
 * Although section 2804(a)(2) of the PMPA requires a franchisor generally to give a franchisee ninety days notice of termination, Texaco provided Davis only ten days notice. However, we conclude that the district court did not err in finding that requiring ninety days notice in this case would not have been reasonable and, therefore, under an exception to section 2804(a)(2), Texaco was required only to give notice when "reasonably practicable." 15 U.S.C. Sec. 2804(b)(1); see also Abujudeh v. Mobil Oil Corp., 841 F.2d 310, 311-12 (9th Cir.1988) (interpreting Sec. 2804(b)(1)).
 
 
 10
 Texaco submitted evidence establishing that Davis's noncompliance with the preliminary injunction during the ninety day notice period would have subjected Texaco to mounting lost profits and loss of goodwill. See Marathon Petroleum Co. v. Pendleton, 889 F.2d 1509, 1512 (6th Cir.1989) (less than ninety days notice reasonable when franchisee had declining interest in operating station and was failing to maintain adequate gasoline supplies). Although Texaco had several months notice that Davis intended to close his stations for twenty-four hours on the weekends, what the district court called the "pivotal issue giving rise to the termination" did not occur until Texaco had obtained the preliminary injunction and Davis refused to comply with it. Requiring Texaco to seek termination as soon as its relationship with Davis became problematic would undermine the purpose of the PMPA to protect station operators from arbitrary termination. See DuFresne's Auto Service, Inc. v. Shell Oil Co., 992 F.2d 920, 925 (9th Cir.1993) (discussing congressional intent behind PMPA); see also Nassau Blvd. Shell Service Station, Inc. v. Shell Oil Co., 875 F.2d 359, 362-63 (2d Cir.1989) (requiring franchisor to initiate termination "as soon as [it] hears an allegation against a franchisee [would be] at odds with the congressional intent in promulgating the PMPA"); Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 29 (1st Cir.1987) (franchisor "entitled to a reasonable time to evaluate the need for termination"). Under the circumstances, Texaco provided notice as soon as reasonably practicable.
 
 B
 
 11
 As the franchisor, Texaco bears the burden of proving that grounds existed for terminating its relationship with Davis. 15 U.S.C. Sec. 2805(c). We hold that Texaco has met its burden as a matter of law. Under section 2802(b)(2)(A) of the PMPA, a franchisor may terminate if the franchisee fails to "comply with any provision of the franchise" that "is both reasonable and of material significance to the franchise relationship."[1] Texaco terminated its relationship with Davis because he violated a provision in his sales and lease agreements with Texaco requiring in part that he obey "any applicable ... judicial ... orders." Davis admits that he did not comply with the district court's order that he keep his stations open twenty-four hours a day.
 
 
 12
 Davis contends, though, that the preliminary injunction "was improvidently issued" and cannot be material to the franchise relationship. He argues that the district court should not have issued the preliminary injunction because Texaco had failed to show a likelihood of success on the merits in its suit for specific performance and because the balance of harms favored Davis. Even if the preliminary injunction otherwise was properly issued, he argues, it violated the First Amendment by requiring him to violate his religious beliefs.
 
 
 13
 We decline Davis's invitation to review the propriety of the preliminary injunction. Termination was based on Davis's violation of a contract provision that has nothing to do with religion; it simply requires him to comply with judicial orders. Davis's conduct in the face of a binding judicial order impaired Texaco's expectation that he would comply with the law and discharge his obligations to the franchise. See Khorenian v. Union Oil Co., 761 F.2d 533, 536 (9th Cir.1985) (franchisors are "entitled to reasonable expectations of compliance by the franchisee with the provisions of the franchise agreement"). Moreover, this particular injunction pertained to Davis's work hours, a provision included in the parties' agreements. Under these circumstances, the requirement that Davis comply with judicial orders was reasonable and material to the franchise relationship, and Davis's breach of this contract provision constituted grounds for termination under the PMPA, regardless of the validity of the district court's order.[2] Cf. Lewis v. Exxon Corp., 716 F.2d 1398, 1399-1400 (D.C.Cir.1983) (basis of termination under section 2802(c)(12) of the PMPA is fact of felony conviction, not the conviction's validity).
 
 
 14
 Davis maintains that, even if valid grounds for termination existed, termination nevertheless was inappropriate because Texaco invoked these grounds as a pretext to retaliate against him for "vigorously and publicly defending his constitutional rights." Although a franchisee may rebut a franchisor's grounds for termination by producing evidence that the termination was based on illegitimate considerations, see Reyes v. Atlantic Richfield Co., 12 F.3d 1464, 1469-70 (9th Cir.1993), Davis has failed to produce any evidence suggesting a retaliatory motive. The fact that Texaco did not resort to the courts until four months after Davis began closing his stations on Saturday does not, as Davis maintains, "belie a hidden agenda." This allegation alone does not raise a genuine issue of material fact regarding a retaliatory motive.
 
 III
 
 15
 Davis appeals the district court's order of summary judgment in favor of Texaco in his counterclaims to Texaco's action for specific enforcement. In response to Texaco's action for specific performance, Davis brought three counterclaims against Texaco. In two of these, Davis argued that Texaco's attempt to keep his service stations open twenty-four hours a day, seven days a week was a bad faith attempt to impose an unreasonable standard of conduct and therefore violated Oregon's statutory law governing motor fuel franchises See O.R.S. Secs. 650.210(5) and 650.245.[3]
 
 
 16
 Davis also pursued a counterclaim against Texaco under 42 U.S.C. Sec. 1983, arguing that Texaco had acted under color of state law to deprive him of a federally protected right by resorting to the courts to require him to work on the Sabbath in violation of his religious beliefs.
 
 
 17
 We hold that Davis's counterclaims were properly dismissed.
 
 
 18
 * We agree with the district court that Davis's state law counterclaims are moot because relief is no longer available. Because Davis does not still operate the service stations, he cannot obtain injunctive relief from a twenty-four hours a day, seven days a week schedule of operation. Furthermore, Davis has no claim to damages from being forced to work on the Sabbath in violation of his religious beliefs because Davis never complied with Texaco's demand that he do so.
 
 
 19
 Davis contends that he retains a viable claim for damages resulting from the loss of his service stations in the termination action because if Texaco had not sought to obtain a preliminary injunction requiring him to keep his stations open on the Sabbath, the district court would not have granted the preliminary injunction, he would not have disobeyed it, and his franchise relationship would not have been terminated. We reject his "but for" analysis. Although Texaco's request for a preliminary injunction may have set in motion the chain of events eventually leading to Davis's termination, the reason for termination was Davis's violation of a provision of his franchise agreements requiring him to comply with judicial orders. We fail to see how Davis can recover damages under state law for a termination that was lawful under the PMPA. See 15 U.S.C. Sec. 2806(a) (PMPA preempts state law "with respect to termination"); Simmons v. Mobil Oil Corp., 29 F.3d 505, 511 (9th Cir.1994); In re Herbert, 806 F.2d 889, 892 (9th Cir.1986).
 
 
 20
 We also reject Davis's contention that, in a suit to enforce Oregon's statutory law governing motor fuel franchises, he may recover damages for the emotional pain he suffered from being forced to choose between obeying the court or obeying God. Under Oregon law, damages for emotional or psychic injury are not recoverable in contract. See, e.g., Hammond v. Central Lane Communications, 816 P.2d 593, 597 (Or.1991); Keltner v. Washington County, 800 P.2d 752, 756-58 (Or.1990). Moreover, absent an affirmative indication that the legislature intended to expand the scope of available remedies, Oregon's courts have refused to hold that a violation of a state statute governing contractual relationships constitutes a tort entitling a plaintiff to recover for emotional distress. See Farris v. United States Fid. & Guar. Co., 587 P.2d 1015, 1018 (Or.1978) (addressing state statute requiring insurer to make good faith attempt to settle claims promptly and equitably).
 
 
 21
 Because Davis could not obtain effective relief even if he proved that Texaco violated Oregon law governing motor fuel franchises, his state law counterclaims were properly dismissed as moot.
 
 B
 
 22
 We also agree that the district court properly dismissed Davis's counterclaim under 42 U.S.C. Sec. 1983 for failure to state a claim. To state a claim under section 1983, Davis must show that Texaco acted under color of state law and deprived Davis of a federal right by obtaining from the district court a preliminary injunction requiring him to operate his stations twenty-four hours a day, seven days a week. To be considered "under color of state law," a private actor's conduct must be "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Even if Texaco could have been considered as acting under color of state law had it employed Oregon's state courts to obtain specific performance, here Texaco used the enforcement mechanisms of a federal district court. Because federal action is not actionable under section 1983, Wheeldin v. Wheeler, 373 U.S. 647, 650 n. 2 (1963); Dale-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir.1987), the district court properly dismissed Davis's section 1983 counterclaim.[4]
 
 IV
 
 23
 In addition to his appeal from summary judgment in Texaco's suit for termination, Davis appeals the district court's denial of his request for an order temporarily restraining the termination and the district court's preliminary injunction requiring him to keep his stations open twenty-four hours a day. We dismiss both appeals as moot.
 
 
 24
 Because we have affirmed the district court's summary judgment in favor of Texaco approving termination of the franchises, reversal or denial of the district court's orders regarding injunctive relief would have no practical effect. See Mt. Graham Red Squirrel v. Madigan, 954 F.2d 1441, 1450 (9th Cir.1992). Moreover, no "collateral consequences" keep Davis's appeals alive. Davis cannot maintain an action against Texaco for damages because Texaco's termination of its relationship with Davis was lawful under the PMPA. Although Davis maintains that he also has a claim for attorney's fees, see 15 U.S.C. Sec. 2805(d) (attorney's fees to franchisee who prevails in request for TRO), this claim alone cannot revive a moot issue. Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990) ("interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"); United States v. Ford, 650 F.2d 1141, 1143 (9th Cir.1981) ("a claim for attorney's fees does not preserve a case which otherwise has become moot on appeal"), cert. denied, 455 U.S. 942 (1982); cf. Furniture Moving Drivers v. Crowley, 467 U.S. 526, 535, n. 11 (1984) ("several important collateral matters, including claims for damages, attorney's fees, and costs" presented a live controversy) (emphasis added).
 
 V
 
 25
 Davis's appeals of the district court's grant of Texaco's motion for a preliminary injunction and of the district court's denial of his motion for an order temporarily restraining Texaco's termination of his franchises are dismissed as moot. We affirm the district court's grant of Texaco's motion for summary judgment on all claims.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court also found grounds for termination under section 2802(b)(2)(B), which provides for termination if the franchisee fails to "exert good faith efforts to carry out the provisions of the franchise," and under section 2802(b)(2)(C), which provides for termination upon the "occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise ... is reasonable." Because we find that termination was appropriate under section 2802(b)(2)(A), we do not address whether termination would be justified under these other provisions
 
 
 [2]
 For identical reasons, the district court properly ignored defendant's affirmative defenses, which were based on the alleged unconstitutionality of the preliminary injunction
 
 
 [3]
 O.R.S. Sec. 650.210 prohibits a franchisor from imposing a contract, rule, or regulation upon a franchisee unless it can sustain the burden of proving the standard of conduct to be reasonable. O.R.S. Sec. 650.245 requires that the principle of good faith must govern the franchise relationship
 
 
 [4]
 Davis's reliance on Shelley v. Kraemer, 334 U.S. 1 (1948), Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991), and Cohen v. Cowles Media Co., 501 U.S. 663 (1991), lacks merit. Cohen and Shelley both involved private use of the state courts, and Edmonson involved an equal protection claim under the Fifth Amendment where the "state actor" is the federal government