# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 3, 2006                 Decided July 3, 2007

No. 05-1225

TRANSPORTATION WORKERS UNION OF AMERICA, AFL-CIO,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENT

On Petition for Review of an Order of the
Department of Homeland Security

*Hal K. Gillespie* argued the cause for petitioner. With him
on the briefs was *Richard S. Edelman*.

*Jeffrica Jenkins Lee*, Attorney, U.S. Department of Justice,
argued the cause for respondent. With her on the brief were
*Peter D. Keisler*, Assistant Attorney General, and *Michael Jay
Singer*, Attorney.

Before: GARLAND and BROWN, *Circuit Judges,* and
WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: This case involves a procedural challenge to the Transportation Security Administration's recent Legal Guidance on Criminal History Record Checks. The guidance is TSA's latest attempt to define the term "conviction," since both statute and regulations bar people with disqualifying criminal convictions from working in sensitive positions at airports, but neither statute nor regulations define the term. We do not reach the merits. The Transportation Workers' Union cannot show a causal link between the action it challenges (issuing the new guidance without notice and comment) and the injury it suffered (a Union member losing his job). Without causation, the Union lacks standing and we lack jurisdiction.

I

Congress answered the terrorist attacks of September 11, 2001 in part with the Aviation and Transportation Security Act, which created a new federal agency, the Transportation Security Administration, to oversee a toughened security regime for airports and air traffic. Pub. L. No. 107-71, 115 Stat. 597 (2001) (codified in part at 49 U.S.C. § 44936 *et seq.*). The Act requires "an employment investigation, including a criminal history record check" for any airport or airline employee or prospective employee with "unescorted access . . . to (i) aircraft . . . or (ii) a secured area of an airport . . ."; if an employee or applicant proves to have been "convicted (or found not guilty by reason of insanity)" of a listed crime within the preceding ten years, he may not be hired or must be fired or transferred to a less sensitive position. 49 U.S.C. § 44936(a)-(b). TSA was to issue regulations accordingly, *id.*, and did so in February 2002, 67 Fed. Reg. 8340 (Feb. 22, 2002) (codified in part at 49 C.F.R. §§ 1542.209, 1544.229, .230). But neither statute nor regulations defined the term "conviction," and "[t]he word . . . is a chameleon," *Harmon v. Teamsters Local Union 371*, 832 F.2d 976, 978 (7th Cir. 1987), with different meanings in different

states, *Dickerson v. New Banner Inst., Inc*., 460 U.S. 103, 112 (1983) (noting "varying state laws, procedures, and definitions of 'conviction'"), under different federal statutes, *id*. at n.6 ("To be sure, the terms 'convicted' or 'conviction' do not have the same meaning in every federal statute."), and even in different contexts in the common law, *Lewis v. Exxon Corp*., 716 F.2d 1398, 1400 (D.C. Cir. 1983) ("Under the common law, the term 'conviction' has, and continues to have, one of two accepted meanings . . . ."). As airports and airlines audited current and prospective employees, TSA received question after question: Does federal or state law govern the definition of "conviction"? How should we regard a deferred adjudication? What if charges were dropped following completion of a first offender program? And so on.

For some months, TSA responded to these questions individually. But in May 2003, without prior notice and comment, TSA published on its website a document entitled "Legal Guidance on Criminal History Records Checks" (2003 Guidance), aimed at "provid[ing] information for decision makers involved in adjudicating background checks on individuals with unescorted access authority at our nation's airports." Under the heading "What Is a Conviction?" the 2003 Guidance explains that federal, not state law determines whether a defendant was "convicted," and notes among its examples that deferred adjudication, with probation, after a guilty plea, counts as a conviction for purposes of the Act and regulations. States sometimes use this or similar plea arrangements to keep minor or first-offender crimes off someone's criminal record. *See, e.g.*, *Davis v. State*, 968 S.W.2d 368, 370 (Tex. Crim. App. 1998) (describing "the main benefit of deferred adjudication" as its "record-cleansing effect"). Perhaps in recognition of that fact, the 2003 Guidance's first footnote (Footnote One) states: "In some cases, a defendant may be advised by a court that he or she has not entered a plea that constitutes a conviction under state

4

law. In such cases, TSA will not consider the offense to be disqualifying if the applicant can provide sufficient proof of the court's advice, generally in the form of a certified copy of the court proceeding transcript." In May 2004, again without notice and comment, TSA issued on its website an updated "Legal Guidance on Criminal History Records Checks" (2004 Guidance). The differences between the 2003 and 2004 Guidance were on the whole slight, but Footnote One was gone. "[N]o individual had produced a certified trial transcript or other documentation" taking advantage of it, TSA's brief explains. Respondent's Br. 11.

Jose Valle, an American Airlines stock clerk with unescorted access to secure areas, pled guilty in Texas in 1998 to felony aggravated assault with a deadly weapon (arising from a domestic dispute with his wife), and in exchange received deferred adjudication with four years community supervision, which he completed without incident. American Airlines learned of the deferred adjudication in 2002, but did not construe it at that time as a "conviction" within the meaning of 49 U.S.C. § 44936 or 49 C.F.R. §§ 1542.209, 1544.229. American Airlines might have reconsidered in 2003—since at first glance, at least, Valle's deferred adjudication counts as a conviction under the 2003 Guidance—but it did not. American Airlines didn't revisit the issue until 2005, when it audited some of its employees' criminal history records (applying, naturally, the 2004 Guidance) and suspended Valle without pay "due to [his] inability to hold unescorted [Secure Identification Display Area] access, an Essential Job Function of [his] position." Memorandum from American Airlines to Jose Valle (Mar. 24, 2005) (Petitioner's App. 21). The suspension memo gave no further explanation and made no reference to any statute or regulation.

Valle gave the letter to his union, the Transportation Workers Union, which wrote American Airlines asking for documents relating to the suspension. One of the documents American Airlines sent was the 2004 Guidance. "This was the *first time*," the Union explains, "that TWU ever saw the May 2004 Guidance Memorandum and the *first time* that TWU became aware of it." Petitioner's Br. 4 (emphasis in original). Sixty days later, the Union brought this challenge to TSA's rulemaking pursuant to the Aviation and Transportation Security Act, 49 U.S.C. § 46110(a) ("[A] person disclosing a substantial interest in an order issued by the [TSA] . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit . . . .").

## II

This case turns on the causation prong of Article III standing. The three-part test for standing described in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), requires (1) injury in fact, (2) causation, and (3) redressability. The causation requirement concerns the link "between the injury and the conduct complained of"; the second is some legal wrongdoing (a bullet fired with ill intent, an investor tricked) and the first its alleged result (a loss of life or property). *Id.*; *see also Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984) (defining and contrasting causation and redressability). We must, then, be very clear about what conduct and injury the Union puts at issue, for although standing is an anterior question of jurisdiction, the grist and elements of our jurisdictional analysis require a peek at the substance of plaintiff's arguments. *See Allen*, 468 U.S. at 752 ("Typically . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."); *Warth v. Seldin*, 422 U.S. 490, 500

(1975) ("Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal, it often turns on the nature and source of the claim asserted." (internal citation omitted)).

The Union challenges the issuance of the 2004 Guidance, but not on the usual ground that the 2004 Guidance's definition of "conviction" is arbitrary, contrary to statute, or in excess of TSA's statutory authority, 5 U.S.C. § 706(2)(A), or that the definition constitutes a "legislative rule" or "substantive rule," which would require notice and comment, rather than an "interpretive rule," which would not, *compare* 5 U.S.C. § 553(b) *with id.* § 553(d); *see also Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1024 (D.C. Cir. 2000) (distinguishing legislative and interpretive rules). Indeed, the Union concedes that the 2003 and 2004 Guidances were interpretive. Petitioner's Br. 10, 18. The Union instead relies on a line of cases holding that an agency cannot significantly change its position, cannot flip-flop, even between two interpretive rules, without prior notice and comment. *See Alaska Prof'l Hunters Ass'n, Inc. v. FAA*, 177 F.3d 1030, 1033-34 (D.C. Cir. 1999) (requiring notice and comment before the FAA could reverse a decades-old interpretation of its commercial pilot regulations in Alaska); *Ass'n of Am. R.R. v. Dep't of Transp.*, 198 F.3d 944, 950 (D.C. Cir. 1999) (recognizing general requirement of notice and comment before revising established rules, but permitting an initial period of revision before rules become established); *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997) ("Once an agency gives its regulation an interpretation, it can only change that interpretation . . . through the process of notice and comment rulemaking."). Thus, the "conduct complained of" here is the procedural wrong of switching from the 2003 to 2004 Guidance without notice and comment. The injury alleged is Valle losing his job. (The Union abandoned any claim of injury to itself and standing in its own right when it conceded in

oral argument that "its only claim to standing is through [Valle]." Oral Arg. at 13:10; *see also Warth*, 422 U.S. at 511. With standing only as Valle's representative, if at all, the Union must show injury to him. *See Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).) We come, then, to a single question: Did the change from the 2003 to 2004 Guidance without notice and comment cause Valle to be fired?

The fundamental problem with the Union's standing claim is that, absent the 2004 Guidance, Valle's deferred adjudication would have constituted a conviction and cost him his job anyway. The 2003 Guidance and 2004 Guidance are alike in almost every relevant respect. In particular, both make deferred adjudication and community supervision following a plea of guilty or no contest a "conviction" within the meaning of 49 U.S.C. § 44936 and 49 C.F.R. §§ 1542.209, 1544.229, and 1544.230. The only arguably relevant difference between the pair is the 2003 Guidance's revoked Footnote One, promising that "TSA will not consider the offense to be disqualifying" if a court advised the defendant "that he or she has not entered a plea that constitutes a conviction under state law," provided the defendant "can provide sufficient proof of the court's advice, generally in the form of a certified copy of the court processing transcript." As both parties agreed at oral argument, Valle has standing if he can claim this footnote's shelter, and lacks it if he cannot. Oral Arg. at 2:37, 13:01, 30:23.

This petition comes to us directly under 49 U.S.C. § 46110(a) without any prior evidentiary hearing before TSA or American Airlines—in part because Footnote One had been dead for a year by the time Valle was fired, and neither he nor the Union had any reason to invoke its protection had they known of it. So we must ourselves apply Footnote One to Valle's claim, with no factual findings (or opportunity to get them on remand) concerning the advice Valle did or didn't get

from a Texas court. This happens from time to time in agency cases, and we have established that the petitioner bears the "burden of production in the court of appeals" and "must support each element of its claim to standing 'by affidavit or other evidence.'" *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (quoting *Defenders of Wildlife*, 504 U.S. at 561). The two highly problematic snippets of evidence the Union presents plainly fall short of the standard of proof Footnote One requires.

Footnote One is conditional: An offense is not disqualifying *if* the employee or job applicant can provide "sufficient proof"—on the order of a certified court transcript—that a court said the plea did not count as a conviction under state law. The Union has not submitted a certified court transcript. We have instead Valle's own sworn affidavit from 2006, stating:

> Prior to agreeing to accept the state's plea bargain, my attorney advised me that if I entered into the agreement and successfully completed a period of community supervision, my plea would not be considered a conviction under Texas state law. Though I did not hear that information directly from the court, I understood that my attorney was relaying information to me that the court had specifically provided to him to give to me. If I had not been advised by the court, through my attorney, that my plea would not constitute a conviction under Texas state law, I would not have entered into the plea bargain agreement.

TSA argues Valle fails Footnote One because he was, by his own admission, advised of his conviction status by his lawyer rather than the court. At the very least, we agree that a party's self-interested claims about what a judge told him (or rather, a party's self-interested claims about what a lawyer told him about what a judge told the lawyer) are far less reliable than a certified transcript where we can read what the judge actually said.

9

Footnote One requires the latter or its evidentiary equivalent.

At oral argument, the Union's counsel offered—for the first time—a second piece of evidence. Oral Arg. at 2:58. Referring the court to the Texas Code of Criminal Procedure's provision governing deferred adjudication (never cited in the briefs), counsel pointed out language requiring that "[a]fter placing the defendant on community supervision under this section, the judge shall inform the defendant orally or in writing of the possible consequences . . . of a violation of community supervision." TEXAS CODE CRIM. PROC. ANN. art. 42.12. § 5. We are asked to infer, on this slim basis, that the judge in Texas informed Valle of the fact that his plea would not constitute a conviction under state law. Even were we willing to do so, the argument comes too late. *See Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002) ("[A] petitioner whose standing is not self-evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding. . . . [A]n argument first made in the reply comes too late." (internal quotation marks and citation omitted)).

One could object, although counsel assumes the point rather than arguing it, that the causation question is answered simply by noting that Valle had a job and lost it when the 2004 Guidance was applied to him. He was fired, one could say, *because* of the 2004 Guidance, and therefore the 2004 Guidance was the cause of his injury—QED. But this argument makes too little of the *particular* claim the Union advances. The question is not whether the 2004 Guidance caused Valle to be fired but whether the *change* from the 2003 to 2004 Guidance caused Valle to be fired. The change caused nothing, for, were every word distinguishing the 2003 and 2004 Guidances to be erased, Valle would be fired just the same and for just the same reason.

10

\* \* \*

The petition is therefore

*Denied.*