# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 13, 2007              Decided July 25, 2008

No. 06-1212

KLAMATH WATER USERS ASSOCIATION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

PACIFICORP, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*George K. Kiely* argued the cause for petitioner. On the briefs was *Edward A. Finklea*.

*Samuel Soopper*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. On the brief were *John S. Moot*, General Counsel, *Robert H. Solomon*, Solicitor, and *Jeffery S. Dennis*, Attorney.

*Sam Kalen*, *Michael A. Swiger*, *Charles R. Sensiba*, *Thomas P. Schlosser*, *Glen H. Spain*, *Howard M. Crystal*, and *Joshua Randolph Stebbins* were on the brief for intervenors in support of respondent.

Before: HENDERSON, GARLAND, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: For nearly one hundred years, the operator of the Link River Dam provided low-cost electric power for irrigation use in and around the Klamath River Basin in southern Oregon and northern California, pursuant to a contract first executed in 1917 and later extended in connection with the licensing of the dam. In 2006, the Federal Energy Regulatory Commission (FERC) decided that an annual license issued to the dam's operator would not include the terms of that contract. The Klamath Water Users Association (KWUA) challenges that decision as error.

We cannot reach the merits of KWUA's challenge because it has not shown that the injury to its members would be redressed by a favorable ruling from this court. California and Oregon have independent authority to fix the rates charged by the operator to its retail customers, and each has already held that it will not be bound by the contract rates. KWUA has offered no reason to believe that a decision requiring FERC to include the contract in the operator's annual license would affect those state decisions.

I

KWUA is a nonprofit corporation comprising irrigation districts and agricultural businesses in the Klamath River Basin. As part of the Department of the Interior's Klamath Irrigation Project, KWUA members receive water from the Link River Dam, which was constructed by PacifiCorp's predecessor (hereinafter "PacifiCorp") pursuant to a 1917 contract with the United States. That contract had a fifty-year term and provided

that PacifiCorp would convey the dam to the United States, but that it would retain the right to operate the dam in exchange for furnishing water and low-cost electric power to the United States and the irrigators.

In the 1950s, FERC's predecessor, the Federal Power Commission (FPC), determined that PacifiCorp's Klamath Hydroelectric Project (which includes the Link River Dam) was subject to its licensing authority and issued PacifiCorp a fifty-year license. In the licensing order, the FPC directed PacifiCorp to file the 1917 contract, either with amendments or as a new contract with substantially the same terms, to cover at least the same fifty-year period as the license. *In re California Oregon Power Co.*, 13 F.P.C. 1, 1954 WL 47779, at *8 (1954). The FPC also found, in accordance with section 10(e) of the Federal Power Act (FPA), 16 U.S.C. § 803(e), that the consideration and benefits provided in the 1917 contract were reasonable and adequate to compensate the United States for PacifiCorp's use of the dam. *Id.* at *9.

In January 1956, pursuant to the FPC's order, PacifiCorp filed a revised and extended version of the 1917 contract. Under the revised contract, PacifiCorp agreed to provide electric power at fixed rates to the United States and customers of the Klamath Irrigation Project, for use in pumping irrigation water. The 1956 contract stated that it was for a term of fifty years, effective from the date it was approved by both the Oregon and California public utility commissions. The states' approval yielded an expiration date of April 16, 2006. In February 1956, the FPC issued an order finding that the contract adequately compensated the United States for use of the dam, amending PacifiCorp's license to reflect the 1956 contract, and changing the license's effective date to make its term fall within that of the contract. *In re California Oregon Power Co.*, 15 F.P.C. 14 (1956). The license was set to expire on February 28, 2006.

In 2004, anticipating the February 2006 expiration of its license, PacifiCorp filed an application with FERC for a new license to continue operating the Klamath Hydroelectric Project. While that application was pending, PacifiCorp was entitled to annual licenses pursuant to section 15(a)(1) of the FPA, which provides that "the commission shall issue from year to year an annual license to the then licensee under the terms and conditions of the existing license until the property is taken over or a new license is issued." 16 U.S.C. § 808(a)(1). In September 2005, the Interior Department petitioned FERC for a declaratory ruling that any annual license issued to PacifiCorp would require that the 1956 contract, including the rates for electric power specified in that contract, continue in effect. Interior contended that the FPC had made the terms of the 1956 contract "an integral part of the license." *PacifiCorp*, 114 F.E.R.C. ¶ 61,051, at 61,141 (2006) ("*PacifiCorp Order*") (internal quotation marks omitted). Thus, according to Interior, the contract's terms were also terms and conditions of PacifiCorp's existing license that had to be part of any annual license granted to PacifiCorp pursuant to FPA section 15(a)(1). KWUA intervened in the FERC proceedings in support of Interior.

On January 20, 2006, FERC denied Interior's petition. It assumed without deciding that the 1956 contract was a term of PacifiCorp's license, but held that the contract expired by its own terms on April 16, 2006. Hence, FERC ruled, "any annual license for the project following the license expiration date of February 28, 2006, will not include the terms of the 1956 Contract beyond April 16, 2006." *Id*. at 61,142. In March 2006, FERC issued PacifiCorp an annual license for the continued operation of the Klamath Hydroelectric Project.

While the FERC proceedings were ongoing, the Oregon Public Utility Commission (OPUC) and California Public

Utilities Commission (CPUC) initiated proceedings to set electric rates for the Klamath Irrigation Project's farmers and irrigators. In June 2005, the Oregon commission denied PacifiCorp's motion to delay action pending FERC's ruling on Interior's petition, holding that it, and not FERC, had jurisdiction over retail rates and that it must conduct an independent review of the contract rates even if FERC were to extend those rates in PacifiCorp's annual licenses. *In re Pacific Power & Light*, No. UE 171, at 5, 2005 WL 1529760 (O.P.U.C. June 6, 2005) (Order No. 05-726). In April 2006, OPUC determined that the 1956 contract would expire on April 16, 2006, and it decided to shift irrigation customers to full general irrigation tariff rates over several years. *In re Pacific Power & Light*, No. UE 170, 2006 WL 1675377 (O.P.U.C. Apr. 12, 2006) (Order No. 06-172). The California commission similarly decided to transition irrigation customers to full tariff rates following the April 16, 2006, expiration of the contract. *In re Application of PacifiCorp*, No. U 901-E, 2006 WL 1049355 (C.P.U.C. Apr. 13, 2006) (Decision No. 06-04-034).

On April 20, 2006, FERC denied Interior's petition for rehearing and affirmed that the 1956 contract terms would not be included in annual licenses issued to PacifiCorp. *PacifiCorp*, 115 F.E.R.C. ¶ 61,075 (2006) ("*PacifiCorp Order Denying Rehearing*"). FERC pointed out that "the 1956 contract became effective, not upon any approval by this Commission, but upon approval by California and Oregon." *Id.* at 61,226. This showed, FERC said, that it had "never purported to approve or fix [PacifiCorp's] retail irrigation rates, but only found that the 1956 Contract adequately compensate[d] the United States for the use of its property." *Id.* And it noted that both Oregon and California had recently elected to exercise their independent authority to modify PacifiCorp's retail electric rates. *Id.*

The Interior Department did not petition this court for review of FERC's decision, but KWUA did. KWUA contends that its members face increases in their power costs of more than 1000% as a result of FERC's decision. KWUA Br. 5. Adopting Interior's argument before the Commission, KWUA maintains that the electric power rates contained in the 1956 contract were an express condition of PacifiCorp's license and that FPA section 15(a)(1) requires FERC to issue annual licenses for the project that include those rates. We do not reach the merits of this argument because KWUA has not demonstrated that it has standing to pursue it.

II

In its opening brief, KWUA claimed standing on the ground that it had been an intervenor in the FERC proceedings. KWUA Br. 6. But "[p]etitioners do not have a right to seek court review of administrative proceedings merely because they participated in them. Unlike an agency, our authority to hear a case is limited by the standing requirements of the United States Constitution." *Competitive Enter. Inst. v. U.S. Dep't of Transp.*, 856 F.2d 1563, 1565 (D.C. Cir. 1988). Those "irreducible constitutional minimum" requirements are that the petitioner suffered an injury-in-fact, that the injury is fairly traceable (causally connected) to the challenged agency action, and that it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see Bennett v. Spear*, 520 U.S. 154, 167 (1997). Because we agree with FERC that KWUA has failed to demonstrate redressability, we do not address the other standing requirements.

FERC argues that, "to the extent [KWUA] claim[s] injury from the loss of the favorable rates for retail electric power contained in the 1956 Contract, that injury cannot be redressed

by a favorable decision of this Court." FERC Br. 12. According to FERC, the rates that PacifiCorp charges KWUA members are retail rates, which are regulated by the states and over which the Commission has no jurisdiction. FERC Br. 17.[1] This is so, FERC says, even if the Commission makes particular rates a condition of a license; indeed, the 1956 contract itself stated that it did not become effective until it was approved by the state public utility commissions. FERC maintains that the "Commission has never purported to approve or fix the licensee's retail irrigation rates, but only found that the 1956 Contract adequately compensates the United States for the use of its property." *PacifiCorp Order Denying Rehearing*, 115 F.E.R.C. at 61,226.

"Because the Commission lacks jurisdiction to approve or modify PacifiCorp's retail rates," FERC insists that KWUA "cannot make the required showing that a decision from this Court directing the Commission to include the 1956 Contract in the annual license" will redress KWUA's injury. FERC Br. 18. To the contrary, it argues that California and Oregon have "undisputed independent authority to set PacifiCorp's retail rates" irrespective of such a license condition, and notes that both states -- as recounted in Part I -- have already set new, higher retail rates for PacifiCorp's service to its irrigation customers. FERC Br. 18; *see also PacifiCorp Order Denying Rehearing*, 115 F.E.R.C. at 61,226 ("[California] and Oregon have elected to exercise [their authority to modify PacifiCorp's retail electric rates] based on an April 16, 2006 expiration date for the 1956 Contract.").

---

[1]*See PacifiCorp Order*, 114 F.E.R.C. at 61,142 ("[T]his Commission clearly has no jurisdiction over PacifiCorp's retail rates."). *See generally* 16 U.S.C. § 824; *New York v. FERC*, 535 U.S. 1, 16-17 (2002); *FPC v. Conway Corp.*, 426 U.S. 271, 276-77 (1976).

In a case like this, in which relief for the petitioner depends on actions by a third party not before the court, the petitioner must demonstrate that a favorable decision would create "a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002) (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998); *Bennett*, 520 U.S. at 169-71; and *Metropolitan Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264-65 (1991)). In *US Ecology, Inc. v. United States Department of the Interior*, 231 F.3d 20 (D.C. Cir. 2000), for example, the plaintiff company -- which sought to build a radioactive waste disposal facility on federal land in California -- sued the Interior Department for refusing to transfer the land to the state. In analyzing the plaintiff's standing, we noted that even if Interior's refusal were wrongful, the plaintiff's "alleged injury would not be redressable unless and until California accepted transfer of the disputed land and elected to proceed with the . . . project." *Id.* at 21. Because "[o]n the record at hand, [the plaintiff had] no grounds upon which to claim that California [would] follow these courses," we dismissed the case for want of standing. *Id.*

There will, of course, be occasions on which an order directed to a party before the court will significantly increase the chances of favorable action by a non-party. For example, in *National Parks Conservation Ass'n v. Manson*, 414 F.3d 1 (D.C. Cir. 2005), we held that the petitioners, who were injured by Montana's decision to issue a permit for a coal-fired plant near Yellowstone National Park, had standing to challenge an Interior Department letter stating that the plant would not adversely affect the Park. Notwithstanding that Montana's Department of Environmental Quality "ha[d] discretionary authority to conduct an independent evaluation when it receive[d] a federal adverse impact report," there was evidence that a "district court order

setting aside Interior's letter . . . would significantly affect [Montana's] ongoing proceedings." *Id*. at 6-7. That, we said, was "enough to satisfy redressability." *Id*. at 7.

But KWUA has offered no reason to believe that a decision requiring FERC to include the 1956 contract in PacifiCorp's annual licenses would have such an effect on the retail rate decisions of California and Oregon. As we have noted, both states' utility commissions have already set new retail rates for PacifiCorp's irrigation customers. *See In re Application of PacifiCorp*, No. U 901-E (CPUC); *In re Pacific Power & Light*, No. UE 170 (OPUC). And KWUA has not suggested any basis for concluding that either state would change its rates if FERC included the contract's terms in the license. At the time the California commission was making its rate determination, it was "cognizant that FERC [was] considering a rehearing of its decision not to extend the 1956 Contract as part of renewing PacifiCorp's Klamath River hydroelectric licenses." *In re Application of PacifiCorp*, No. U 901-E, at 14 n.15. CPUC nonetheless went ahead and raised the rates. The Oregon commission's rejection of the import of FERC's decision was even more decisive. In the course of denying PacifiCorp's motion to delay a decision pending FERC's ruling on PacifiCorp's relicensing, OPUC declared: "[T]his Commission, not FERC, has jurisdiction over rates charged by PacifiCorp to its Oregon retail customers. Consequently, even if FERC extends the [1956] Contract rates, such action cannot relieve this Commission of the duty to review those rates . . . ." *In re Pacific Power & Light*, No. UE 171, at 5.[2]

---

[2]*See also In re Pacific Power & Light*, No. UE 171, at 4 ("PacifiCorp's request implicitly assumes that [OPUC] must first determine that the contract rates have expired before it can examine the underlying question as to what rates these irrigation customers should pay. No such requirement exists. Th[is] Commission's

In response to this redressability problem, which FERC raised in its brief, KWUA's reply brief said nothing at all. That failure to respond is dispositive, as the burden of establishing redressability falls upon the petitioner. *See Miami Bldg. & Constr. Trades Council v. Secretary of Def.*, 493 F.3d 201, 205-07 (D.C. Cir. 2007); *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002). In the absence of evidence or argument showing that a favorable decision would redress KWUA's injury, we cannot consider its petition for review.[3]

---

ratemaking power constitutes the broadest delegation of legislative authority. Utilities and customers cannot limit this power by private contract. . . . [W]e have the continuing authority and obligation to review the appropriateness of the rates contained in those contracts. Thus, regardless of the expiration term of either contract, this Commission has the duty to examine the rates contained therein and, upon a proper showing, modify them." (citations omitted)).

[3]At oral argument, KWUA did eventually suggest two points in support of redressability. But those suggestions were raised too late for our consideration. *See, e.g.*, *Transportation Workers Union of Am. v. Transportation Sec. Admin.*, 492 F.3d 471, 476 (D.C. Cir. 2007) (holding that a claim related to the causation requirement of standing, first offered at oral argument, "comes too late"); *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (holding that contentions first raised at oral argument are waived). In any event, KWUA's suggestions are insufficient to satisfy its burden. First, KWUA suggested that a decision by FERC would effectively preempt state authority, so that if this court directed FERC to make the contract rates a term in PacifiCorp's annual licenses, the states could not alter those rates. *See* Oral Arg. Recording at 9:45. KWUA proffered no case law in support of that assertion, citing instead a statement by counsel for its opponent -- PacifiCorp -- during the Oregon hearings. PacifiCorp now disagrees with the content of that statement, and both Oregon and FERC have held to the contrary. *See In re Pacific Power & Light*, No. UE 171, at 5; *PacifiCorp Order*, 114 F.E.R.C. at 61,142 & n.51. Second, KWUA suggested that the state commissions, in

III

Because KWUA has not demonstrated that a favorable decision by this court would redress its injury, it lacks standing to challenge FERC's order. Accordingly, we dismiss KWUA's petition for want of jurisdiction.

*Dismissed.*

---

accordance with their state laws, would respect a private contract between PacifiCorp and KWUA concerning retail power rates. Oral Arg. Recording at 4:27, 28:50. KWUA pointed to nothing to support that proposition, and, again, the states' actual decisions strongly suggest that KWUA is incorrect. *See, e.g.*, *In re Pacific Power & Light*, No. UE 170, at 8 ("[T]his Commission's broad ratemaking power cannot be limited by private contract."); *supra* note 2.